338 So.2d 1000 (1976)
Marilyn MADDEN et al.
v.
Marcella A. MADDEN.
No. 48875.
Supreme Court of Mississippi.
November 2, 1976.
William E. Andrews, Jr., Purvis, for appellants.
*1001 Jones & Hayden, James R. Hayden, Hattiesburg, for appellee.
Before INZER, P.J., SMITH and BROOM, JJ., and BIZZELL, Commissioner.
WILLIAM H. BIZZELL, Commissioner, for the Court:[1]
This is an appeal from a decree of the Chancery Court of Lamar County relative to the custody of a child.
This cause arose from a petition for writ of habeas corpus filed by appellee wife against appellant husband, after their separation, seeking custody of her child then almost four years old. The petition alleged that appellant husband was not the father of the child. After a hearing the chancellor granted custody to the petitioning mother, and included in the decree an adjudication that appellant husband was not the father of the child.
The parties were married in Texas on May 30, 1970. The child was born seven months later, on December 31, 1970. There is no evidence of an unusual gestation period. The parties separated in Tennessee about October 1970, and appellant husband obtained a divorce in Tennessee on January 18, 1971. The parties thereafter remarried on May 17, 1972. This litigation occurred immediately after their October 1974 separation in Lamar County, Mississippi.
Appellee testified that she and appellant engaged in sexual relations prior to their first marriage. She says that they met in late April, eight months or more prior to the birth. Appellant husband says that they met in March, nine months or more prior to the birth. Appellee wife testified that prior to meeting appellant she had relations with another named man, now deceased, and that she was pregnant as a result of that relationship.
The remaining evidence tended to confirm that appellant husband was the father. At the birth of the child in Texas, appellee mother gave appellant's name as the father, and the birth certificate is in regular form showing the parties as parents. One of the names given the child by appellee was "Wayne", appellant's name by which she called him. The record contains a baby book entitled "Baby's Story," in which the entries were made primarily by appellee. In this book appellant is listed as the father, his parents are listed as paternal grandparents, and there is an entry showing that the child's first travels included a trip by plane from "Houston, Texas to New Orleans to meet daddy for the first time." The child was routinely referred to as the child of appellant for income tax purposes, hospital insurance, military dependency, and veteran's benefits. The child spent some time in the home of appellant's parents, and appellee executed a power of attorney to enable them to authorize medical care at Keesler Field. The child recognizes appellant as its father, and appellant has treated the child as being his. Appellant testified that he believed the child to be his. Except for appellee's testimony, the record contains no indication that she ever denied that appellant was the father until the filing of this petition for writ of habeas corpus.
The only substantial evidence against appellant, other than the testimony of appellee, was that when he filed suit for divorce in Tennessee in October 1970, he alleged that "no children have been born to this union." This was technically correct. The Tennessee divorce decree dated January 18, 1971, made no mention of any child. Appellant testified that he did not learn of the child's birth until after the divorce. Appellant thereafter went into military service and did not seek out appellee or the child, and did not see the child until it was 17 months old. Meanwhile, there had been some correspondence between them, and promptly after their meeting again in 1972 they remarried.
The presumption that a child born in wedlock is a legitimate child is one of the strongest presumptions known to law. *1002 Krohn v. Migues, 274 So.2d 654 (Miss. 1973). Although the presumption is rebuttable, it has been held that a husband denying paternity of a child born in wedlock must prove beyond reasonable doubt that he is not the father. Stone v. Stone, 210 So.2d 672 (Miss. 1968). The facts in Stone illustrate the real strength of the presumption, even in the face of medical testimony. The presumption applies even though the child was conceived prior to the marriage. Ervin v. Bass, 172 Miss. 332, 160 So. 568 (1935); 10 Am.Jur.2d Bastards § 13. Divorce or separation before birth of the child may be a circumstance lessening the presumption, but it does not destroy it. Moore v. Smith, 178 Miss. 383, 172 So. 317 (1937); 10 Am.Jur.2d Bastards § 15.
The presumption of legitimacy of a child born in wedlock is primarily for the benefit of the child, although it may also be a protection to the mother. We hold that this presumption is applicable against the mother equally as against the husband. Although the testimony of the mother in a paternity case may be given great weight, it cannot be considered conclusive. Significant facts here are that (1) there is a real question as to the exact time of first sexual relations between these parties, (2) there has been a long period of clear acknowledgment by both parties, (3) the mother's claim of illegitimacy was made as a means of more certainly getting custody of her child as against the husband, and (4) the four year old child who will bear the primary hurt of this decision was not a party and was not represented. In the face of these facts, it is manifest error to hold that appellant's paternity is disproven beyond a reasonable doubt.
The decree below is reversed insofar as it found that appellant is not the father of the child in question. The cause is remanded for further consideration of custody based upon the best interest of the child. Custody may be determined in this cause, or more properly in the divorce proceeding in the same court.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.