503 So.2d 249 (1987)
Julie Denise BAKER, an Unmarried Minor Who Sues BY Her Adult Next Friend and Mother, Caroline A. WILLIAMS
v.
Charles W. WILLIAMS & Leland Carroll Baker.
No. 55982.
Supreme Court of Mississippi.
February 18, 1987.
*251 John Booth Farese, Farese, Farese & Farese, Ashland, for appellants.
Phillip L. Tutor, Roberts & Tutor, Pontotoc, for appellees.
En Banc.
PRATHER, Justice, for the Court:
This appeal raises the question to what extent children who are not formal parties to a divorce action are bound by some aspects of the decree of divorce. More specifically, this case questions whether a child's prospective right to establish paternity is barred by the adjudication of paternity in a divorce decree. This Court answers in the negative.
Julie Denise Baker, an eleven year old minor child, suing by her mother Mrs. Caroline A. Williams as her next friend, filed a paternity suit against her presumed natural father, Leland Carroll Baker, and her step-father, Charles W. Williams, defendants, in the Chancery Court of Union County.
On motion the chancellor dismissed the complaint with prejudice sustaining the father's affirmative defenses of estoppel, laches and res judicata without a hearing on the merits. Aggrieved as to this ruling, Julie Denise Baker appeals assigning as error that the trial court erred in sustaining defendant-appellee Leland Baker's ore tenus motion to dismiss the complaint.

I.
To the marriage of Leland Carroll Baker and Caroline M. Baker (now Williams), two children were born, one of which was the minor female child involved here, Julie Denise Baker. A divorce was granted to Caroline Baker, together with custody of the two children and child support. The presumed natural father, Leland Carroll Baker, paid all support payments and exercised visitation rights with the minor child for some eleven years.
At some point in time, Caroline Baker (Williams) married Charles W. Williams, and the minor resided with her mother and stepfather. Adoption of Julie was sought by Charles W. Williams, but reserving the maternal rights in the natural mother. That adoption was opposed by the natural father, and the proceeding was dismissed without prejudice. Subsequently, the minor, by her mother as her next friend, filed a petition to establish paternity under Miss. Code Ann. § 93-9-1 et seq. (1972), the Mississippi Uniform Law on Paternity, against her presumed natural father and her stepfather. The allegations of the petition charge the minor in fact to be the issue of the mother and stepfather, rather than the mother and presumed natural father. It was further alleged that blood testing of the minor, mother, and stepfather indicated a ninety-nine percent probability that the stepfather was in fact the father. The petition requested a court ordered blood testing of the presumed natural father.
Relying upon the strong presumption of the legitimacy of a child born in wedlock, the chancellor granted the motion to dismiss on three grounds that: (1) the prior adjudication of paternity in the divorce decree was res judicata, (2) the mother's representations on the minor's birth certificate and in the divorce proceedings estopped her present contrary assertions, and (3) the mother's eleven year delay after receipt of child support constituted laches. The appellant's position here is that the affirmative defenses relied upon by the court cannot be asserted against a minor.

II.
Throughout our legal history, laws have been enacted to support and protect those moral concepts and institutions deemed by society to be sacred. The most fundamental institution of society is the family unit, and legislation promoting legitimate family relationships has been promulgated. The mores of society have sought to strengthen the family unit by rejecting and shunning illicit relationships.
*252 But equally important in the development of our jurisprudence is another fundamental concept of attaining fairness, justice, and equality. It is in this endeavor, to afford fairness and equal protection of the law for illegitimate children, that these two basic principles collide. The resulting conflict was addressed by the United States Supreme Court in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). The Supreme Court acknowledged that prior legislation seeking to deter illegitimate relationships of parents had not been effective for that purpose. Further, the Trimble Court recognized that illegitimate children were penalized by denying to them inheritance rights from their parents. With that decision and its progeny, an entire new jurisprudence has developed regarding illegitimate children's rights and, to some extent, a change in social attitudes. This case, however, represents a case illustrating those two conflicting basic principles in a unique situation where a legitimate child challenges her paternity.

III.
This proceeding is a paternity suit by a legitimate minor child against her presumed natural father and her stepfather under authority of Miss. Code Ann. § 93-9-9 (1972), which in pertinent part provides: "Paternity may be determined upon the petition of the mother, the child, or any public authority chargeable by law with the support of the child... ."
Since the effective date of this statute, July 1, 1962, antedated the Trimble decision of 1977, it can be determined that the legislative intent for its passage was to provide a method for determining paternity of illegitimate children in order to enforce support. However, the Court can find no prohibition for a presumed legitimate child's use of the statute to establish the fact of paternity when, as here, (1) the child is properly before the Court through her next friend and (2) alleges facts to support her claim. Palmer v. Mangum, 338 So.2d 1002 (Miss. 1976) (the status of the mother as next friend is not prohibited under the statute). Likewise, this Court has held that a minor may maintain an action against her father for child support under this statute after the minor has attained the age of one year. Palmer, supra. Putative fathers also have the right to file a petition for filiation. Grimsley v. Tyner, 454 So.2d 482 (Miss. 1984). Thus, this Court holds that a minor child, legitimate or illegitimate, may sue under this statute by next friend. This may be a case for legislative discussion.

A.
Our attention does not end here, but consideration of the identity of the parties is important since the mother appears in the capacity of next friend. The real party in interest here is the child, not the mother, and it is presumed that the mother, as a natural guardian of her child, Miss. Code Ann. § 93-13-1 (1972), acts in the best interest of the child. Here, however, the certified birth certificate of Julie Denise Baker representing the father of the minor child to be Leland Carroll Baker was signed by Caroline Williams, the mother. In the divorce proceedings filed on April 25, 1974, Caroline Williams stated under oath that Julie Denise Baker was "born of this marriage". The chancellor in the divorce decree awarded custody of the minor child to Caroline Williams and ordered the appellee, Leland Carroll Baker, to pay the sum of $40.00 per week as child support for that minor child, as well as one additional minor child born to that marriage. Leland Carroll Baker was further awarded certain visitation privileges with Julie Denise Baker. An attempt to file adoption proceedings failed due to the objection of the presumed natural father; this weighs heavily against the mother's impartiality. Additionally, prospective property rights of the child are involved.
The interest of the mother may or may not be co-extensive with the interest of the child. The chancery court as the guardian of persons under disability of minority has authority to appoint a guardian ad litem.
M.R.C.P. 17(d) provides that when the appointment of a guardian becomes necessary, *253 the court shall appoint an attorney to serve in that capacity whose compensation shall be determined by the court and taxed as a cost of the actions. See also V. Griffith, Mississippi Chancery Practice §§ 34, 45 (2nd ed. 1950); Union Chevrolet Co. v. Arrington, 162 Miss. 816, 138 So. 593 (1932). These facts strongly direct the appointment of such a guardian in this case is needed.
In selection of a guardian ad litem, the Court should appoint a person who is unbiased and independent of the natural mother to insure protection for the child's best interests. The realities of present day domestic relationships suggest that the trauma of divorce may not end, and that a mother may desire to break all ties to a former marriage or the inconveniences of visitation with a former spouse.
Therefore, before a just determination is concluded, this Court strongly suggests that the chancery court exercise its authority to appoint a guardian ad litem to insure and protect the best interests of the child.

B.
Our attention is now directed to whether a claim has been stated upon which relief may be granted. In alleging the facts that the minor has reason to believe that her presumed natural father is not in fact her actual father, the minor's proof must overcome one of the strongest presumptions known to the law, and applies even though the child was conceived prior to the marriage. Madden v. Madden, 338 So.2d 1000 (Miss. 1976); Krohn v. Migues, 274 So.2d 654 (Miss. 1973). The presumption that a child born in wedlock is legitimate continues until it is shown that the husband is incapable of procreation or that he had no access to the wife at times when the child could have been begotten. Alexander v. Alexander, 465 So.2d 340 (Miss. 1985); Stone v. Stone, 210 So.2d 672 (Miss. 1968); Boone v. State, 51 So.2d 473, 211 Miss. 318 (1951).
However, since it is a presumption, it is subject to being rebutted. Since the burden of proof for a husband denying paternity has been established to be proof beyond a reasonable doubt, it follows that the same burden of proof should be applicable to the presumed legitimate child challenging her paternity. Madden, supra.
To overcome such a strong presumption, proof is difficult. In Jacob v. Jacob, 417 So.2d 1367 (La. App. 1982) the Louisiana Court noted that the purpose of their statute requiring the mother, child and alleged father to submit to blood tests was to provide a way to rebut the strong presumption of paternity. In the case sub judice attached as an exhibit to the complaint was the result of HLA blood tests of Julie Denise Baker, Charles Williams and Caroline Williams, which showed to a 99% probability that Charles Williams was the father of the child.[1]
HLA testing is a recent scientific development which has advanced the role of blood and tissue type testing in paternity cases. When used in conjunction with the standard serologic testing, HLA test results can produce a high degree of discrimination either excluding or including a given male as the father of a particular child. In Grimsley v. Tyner, 454 So.2d 482 (Miss. 1984), this Court recognized HLA testing in conjunction with blood tests conducted by a doctor together with other matters to hold that the verdict of the lower court was contrary to the overwhelming weight of the evidence. This test is available for rebutting such presumption if available and authenticated.
Appellant/plaintiff requested a court decree ordering Leland Baker to submit to blood tests. The authority for such order is Miss. Code Ann. § 93-9-21 (1972):
The court, upon motion of the defendant, shall order the mother, the child, and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
*254 It is clear that the court may order such blood test, but according to the statute, it must be upon motion of the defendant. In this case, the defendant, Leland Carroll Baker, made no such motion. Therefore, no blood tests under Miss. Code Ann. § 93-9-21 were required.
This complaint states a claim upon which relief may be granted. M.R.C.P. 12(b)(6); Whitten v. Commercial Dispatch Pub. Co., Inc., 487 So.2d 843 (Miss. 1986); Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985); Stanton & Associates, Inc. v. Bryant Construction Company, Inc., 464 So.2d 499, 505-506 (Miss. 1985); McCain v. Northwestern Nat. Ins. Co., 484 So.2d 1001, 1002 (Miss. 1986); Smith v. City of West Point, 475 So.2d 816, 818 (Miss. 1985); Busching v. Griffin, 465 So.2d 1037, 1039 (Miss. 1985).

IV.
The dismissal of this cause was grounded in affirmative defenses pled by the appellee of (A) res judicata, (B) laches, and (C) estoppel. Appellant contends that dismissal of the case denied her due process rights guaranteed under both the Mississippi Constitution, Art. 3, § 14, and Fifth Amendment of the United States Constitution.

A.
The affirmative defense of res judicata is pled by virtue of the adjudication in the divorce decree that this child was born of the marriage of Caroline and Leland Baker. The question here is whether that adjudication of paternity in the marital dissolution decree is binding on the child.
Appellant argues that in order for the doctrine of res judicata to apply four conditions must be satisfied citing Standard Oil v. Howell, 360 So.2d 1200 (Miss. 1978), wherein the following test is set forth:
The requisites for application of the doctrine of res judicata are: (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of the persons and parties to the action, and (4) identity of the quality and the persons for and against whom the claim is made.
Id. at 1202. Appellant contends that none of the four preconditions is satisfied in the case at bar.
This Court addresses only the identity of the persons and parties to the action of the divorce.
In dealing with the prospective rights of a minor child to establish paternity, the child, if not formally a party, is not bound by a paternity determination in a marital dissolution action.[2]Ruddock v. Ohls, 91 Cal. App.3rd 271, 154 Cal. Rptr. 87 (1979). Similarly a decree in equity cannot adjudicate the rights or liabilities of persons not parties to the proceeeding. Mannard v. Loche, 18 So. 374 (Miss. 1895); McPike v. Wells, 54 Miss. 136 (1876). See also Griffith Mississippi Chancery Practice § 612 (2d ed. 1950). In accord: True-Hixon Lumber Co. v. Thorne, 155 So. 181, Suggestion of error overruled, 171 Miss. 783, 158 So. 909, 911 (1935) (where a party to a former suit relies upon the judgment in that suit as being conclusive upon an issue in a subsequent suit between the same parties, the parties so asserting must show that it is certain that the precise issue of fact, so relied on, was actually determined in his favor in the former suit).
Therefore, this Court holds that Julie Denise Baker is not bound by the prior proceedings or oaths taken by the mother or presumed father in previous divorce proceedings. The Court holds that res judicata is no bar to the present civil action.

B. and C.
As to the defenses of estoppel and laches, the appellee's position was that Caroline Williams waited several years after the divorce decree to bring this action on behalf of Julie; therefore, the mother is guilty of laches. Baker's second position was that the divorce complaint and birth certificate stating that Julie Denise was the daughter *255 of Leland Baker bars the lawsuit under the doctrine of estoppel.
The facts cited by the Court to support this application of estoppel and laches were actions of the mother. This is the child's suit, and the mother's actions cannot be imputed to the child to invoke these doctrines. Wilson v. Wilson, 464 So.2d 498 (Miss. 1985).
Therefore, this Court concludes that the affirmative defenses of res judicata, laches and estoppel should not have been relied upon for dismissal. The chancellor's ruling will be reversed, and the cause will be remanded for proceedings not inconsistent with this decision.
REVERSED AND REMANDED.
ROY NOBLE LEE, P.J., and DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.
WALKER, C.J., HAWKINS, P.J., and GRIFFIN and ANDERSON, JJ., dissent.
GRIFFIN, Justice, dissenting:
The majority states that this appeal raises the question as to what extent children who are not formal parties to a divorce action are bound by some aspects of the divorce decree. To my mind, a far more serious question is raised, and that is whether or not parents or a parent should be permitted to bastardize the child. Absent some compelling reason, and none exists here, this shocks my sense of right and decency.
It is the general rule in this country that where legitimacy or illegitimacy of a child born in wedlock is in issue, neither the husband nor the wife may testify as to non-access between them unless it is otherwise provided by statute. 10 Am.Jur.2d Bastards § 33.
Mississippi recognized the general rule but made an exception thereto in Moore v. Smith, 178 Miss. 383, 172 So. 317 (1937). In doing so, Chief Justice Smith stated the following:
The evidence of the wife as to acts of intercourse with the alleged father of the child whose paternity is in question is universally held competent, as is also evidence of the alleged father himself, the restriction thereon being that it proves nothing in the absence of evidence of nonaccess of the husband to the wife. (emphasis added)
In Moore, supra, a filiation proceeding under the forerunner of our present paternity act, the old bastardy statutes, the child in question was born after divorce but the dates of the divorce and birth show that it was conceived during the marriage. The mother and her ex-husband offered to testify that they had not lived together as husband and wife for over six years prior to the birth of the child. Judge Smith said such proof would have been proper under the facts of that case, but recognized that this was a deviation from the general rule, concluding that "domestic and social policy does not require the exclusion of evidence here under consideration, and that justice would be best promoted by admitting the [evidence of non-access].
Justice Griffith, in Graham v. Lee, 204 Miss. 416, 37 So.2d 735 (1948), substantiates my view of the holding in Moore, supra. In that action a husband separated from his wife on receiving reliable information that she was engaging in an adulterous relationship with Graham in their home county of Lamar while he was employed in Pascagoula and separated from her. Less than nine months but approaching the same, a child was born to his wife while she lived with Graham and that same year Graham, without notice to the husband, adopted the child. The next year, the wife was granted a non-contested divorce from her husband. Some two years later, they filed their joint petition to revoke the divorce. She left Graham and went to George County; whereupon, Graham filed an action in George County, praying for the return of the child and its custody. The presumptive father then learned of the adoption and filed his petition to vacate it, joined by his former wife. Justice Griffith, in passing on the whole sordid affair, had the following to say:
The allegations of the petition to vacate were ample to sustain it. Under the *256 stated facts, at the time the child would have been begotten in the ordinary course of nature, the husband not only had the opportunity of access to his wife but actually did have access to her, whence the presumption is that the child was begotten by the husband, Moore v. Smith, 178 Miss. 383, 386, 172 So. 317, from which it further follows that any proceeding to adopt the child without making the presumptive father a party thereto is invalid under the due process provision of our state and federal constitutions. Const. Miss. Sec. 14; U.S.C.A. Const.Amend 14, Britt v. Allred, 199 Miss. 786, 789, 25 So.(2) 7, citing Sinquefield v. Valentine, 159 Miss. 144, 132 So. 81, 76 A.L.R. 238, and other cases. And the decree of adoption having been properly vacated, it left appellant's present petition for the custody of the child without any basis upon which to stand, and it, too, was properly dismissed.
Appellant says, however, that when the decree of adoption was vacated, the court should have heard, nevertheless, the testimony which appellant says he offered to produce that as a matter of fact appellant is the father of the child and the former husband is not; in other words, that the case should have proceeded on the petition to adopt the child, or else on his later petition for custody. One difficulty with that contention, one entirely sufficient to completely displace it, is that the former wife in her sworn answer to the petition to vacate the decree of adoption so answered that in effect she joined in the petition to vacate, and fully substantiated the allegations of the petition, putting herself in the position of opposing the adoption, so that both the presumptive father and the wife were opposing it, both now averring that the child is the legitimate child of the lawful husband and wife who were so at the date of its birth, and in such a case, as a matter of public policy, no outsider will be permitted to attempt to prove to the contrary. We approve what was said In re Madalina, 174 Cal. 693, 164 P. 348, 1 A.L.R. 1629, 1632, that public policy and common decency are opposed to the bastardizing of children born in wedlock against the wishes and against the protest of their putative parents; and there is nothing to the contrary in Moore v. Smith, supra, relied on by appellant, but, on the contrary, there is much therein to support our present conclusion. (emphasis added).
"A child born during wedlock is presumed to have been begotten by the husband, which presumption continues until the husband is shown to have been incapable of procreation, or to have had no opportunity of access to the wife when the child was begotten." (emphasis added) Moore, supra, 178 Miss. at 386, 172 So. 317; Boone v. State, 211 Miss. 318, 51 So.2d 473 (1951).
Under the pleadings in this case, no proof can be offered that Charles Williams was the father of Julie Denise Baker. We must remember that Williams and his wife first tried an adoption proceeding. Here it is not explained to us why that failed, but we know that Judge Griffith's reasoning in Graham v. Lee, supra, would prohibit it as being invalid under due process provisions of state and federal constitutions, as would our statutory scheme.
Miss. Code Ann. § 93-17-7 (Supp. 1986) informs us as to when one person may adopt the child of another without his consent, one of those instances being when there is termination of rights of unfit parents, as provided in Miss. Code Ann. § 93-15-101, et seq. (Supp. 1986). Certainly Mr. Baker's rights as a parent have not been terminated and under the proof and pleadings here could not be.
Failing in their efforts to have Williams adopt Julie, he and his wife Caroline took a more harsh action against him, and now choose to prove that the child is not his, even though he has supported her for a period of what now appears to be twelve years. The Chancellor upheld the father's affirmative defenses of estoppel, laches and res adjudicata, basing his decision on Caroline's petition for divorce against Baker wherein she alleged it was his child and *257 sought support. Both were found and approved in the divorce action.
The Chancellor's reasoning is not without support as a matter of common sense. However, I do not believe that it is necessary to reach those defenses inasmuch as our paternity act, entitled Uniform Law on Paternity, promoted by the National Conference of Commissioners on Uniform State Laws, as noted by Judge Ethridge in Dunn v. Grisham, 157 So.2d 766 (Miss. 1963), was adopted as a successor to the old bastardy statutes in order to provide a more complete remedy for the support of illegitimate children. It was never contemplated that the proceedings would be used in the manner sought here. I am unable to find any such attempt in this jurisdiction or any other. The Act itself, Chapter 312 Laws 1962, has as its title,
AN ACT to prescribe proceedings to establish paternity of children born out of lawful matrimony; to provide for their support, maintenance, and education; to repeal statutes in conflict herewith; and for related purposes. (emphasis added)
This action will not establish paternity. It was established when the child was born in lawful wedlock. Admittedly the Act does provide in Section 1, as follows: "A child born out of lawful matrimony also includes a child born to a married woman by a man other than her lawful husband." Since the purpose of the Act is to provide support, maintenance and education for the child, this would only cover the unusual situation that Chief Justice Smith found in Moore, supra.
The year following the adoption of the Act, Justice Ethridge was called upon to interpret the Act specifically as to whether the Act applied to children born before its effective date. He held that the Act applied either before or after, holding that the act "impose[s] upon a father the duty to support and maintain his illegitimate child, and gives any public authority, such as the petitioner here, the right to enforce this duty." The action was brought by the Hinds County Welfare Department. Under the old act, "Bastardy", the Board of Supervisors could proceed to enforce a putative father's duty to support an illegitimate child. He stated further:
Its purpose is to make provision for the child's support if and when it becomes a dependent child under the statute. Ortega v. Portales, 134 Colo. 537, 307 P.2d 193 (1957). The Florida court properly observed in Rooney v. Teske, 61 So.2d 376 (Fla. 1952), that "the act conforms with every impulse of right, justice and decency. * * * There is no better settled principle of public policy than that it is the duty of every man to provide food and raiment for his own, and the purpose of the statute was to spell out this principle and apply it to all of his own even though they be bastards. It imposed no responsibility that was not already in good conscience incumbent on the father * * *."
... .
"The new statute provides a new and more effective method and remedy for a filiation order and for requiring a putative father to support his own child."
157 So.2d at 769.
The Supreme Court of Florida in Kendrick v. Everheart, 390 So.2d 53 (Fla. 1980), had before it the general issue as to whether a putative father may bring an action to adjudicate his paternity under the Florida paternity statutes, basically the same act as ours. He sought to have himself adjudicated as the father of five minor children, allegedly born out of wedlock. He had their custody and supported them. The mother and presumptive father admitted that he was the natural father of all of them:
The trial court held that Kendrick did not state a legal cause of action under section 742.011, reasoning that the purpose of the paternity statute is to provide a natural mother with a judicial mechanism for obtaining child support from the natural father rather than to provide a putative father with a means to prove his own paternity. The trial court also held that a putative father may not bring an action for a declaratory judgment adjudicating his paternity under chapter 86, citing Ford v. Loeffler, 363 So.2d 23 (Fla. *258 3d DCA 1978). The court further determined that section 742.011 is constitutional and does not deny a man equal protection of the laws nor access to the courts. The case was, therefore, dismissed without prejudice to Kendrick's right to bring another action for the relief sought under any other more appropriate statutory remedy. From the trial court's judgment dismissing the suit, Kendrick brings this appeal. (emphasis added)
Id. at 55-56.
The Florida Supreme Court agreed that a constitutional issue was not presented, and further stated:
We agree with the trial court that the purpose of the paternity statute, chapter 742, is to afford a basis on which a court may order child support from a man adjudicated to be the father of the illegitimate child.
Id. at 56.
The relief sought here deviates further from the purpose of the act than would the relief sought in Kendrick, supra. However, the court did hold that Kendrick was not precluded "from bringing a declaratory judgment action to adjudicate paternity where such adjudication is necessary to the determination of existing rights or duties between parties to an actual controversy or dispute." Id. I agree that Kendrick's predicament warranted some type of relief, but submit, as did the Florida Court, that the paternity statute was not appropriate.
Both Williams and Baker are defendants here, Williams willingly. Nowhere in the paternity statute is it provided that you may have two defendants. This is the first such case to reach this Court, and I am unable to find where any such proceedings has reached any other court. As noted in Kendrick, supra, and Dunn, supra, the purpose of the statute is to get support for the child. Under the pleadings here, it is apparent that both the presumptive father and the stepfather are doing their duty, and there is no reason to invoke the harsh provisions of the paternity act in order to get support and maintenance for Julie.
Since it is not alleged that Baker was incapable of procreation or was without access to Julie's mother, his lawful wife, it is fair to pose the question: By what evidence does the majority propose to show that Williams is Julie's father?[1] The majority suggests a blood test under the authority of Miss. Code Ann. § 93-9-21 (1972),
The court, upon motion of the defendant, shall order the mother, the child, and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require. (emphasis added)
First it is noted that the motion is to be made by "the defendant" and not "defendants". The reading of the statute is plain. The defendant may make the motion and, if he does, the court shall order him, the mother and the child to submit to blood tests and if any of these three refuse the court may take further action as justice may require, including resolving the question of paternity against the mother, she being the one that generally brings these actions, and certainly if the defendant asks for it he would not then refuse. The blood test was not in the old bastardy statute, and was placed in the paternity act for the protection of the putative father. Miss. Code Ann. § 93-9-27 (1972) provides:
If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly.
Also significant and further demonstrating that the paternity act is not to be used in the manner sought here is the plain wording of Miss. Code Ann. § 93-9-29 (1972), setting forth the order to be entered. As well as declaring paternity, the order must provide for support and education *259 of the child, specifying the sums payable and at what intervals.
In Harper v. Harper, 300 So.2d 132 (Miss. 1974), an action brought under Miss. Code Ann. § 93-11-65 (a section of that Chapter entitled "Enforcement of Support of Dependents"), Justice Gillespie noted the following, in a footnote:
Section 93-9-9 is the enforcement statute under the Code chapter on Uniform Law on Paternity. The general purpose of this chapter is to provide a uniform system of enforcement of the obligation of the father of a child which is born out of lawful matrimony to bear the reasonable expenses of the mother's pregnancy and confinement and the education, support, maintenance, medical and funeral expenses for the child. Nothing in this chapter deprives the chancery court of the power to entertain suits under Code section 93-11-65 where the suit is based on the averment that the child was born in wedlock or that the child was one of the marriage within the meaning of section 91-1-15.
The uniform law on Paternity succeeds the Bastardy statutes but this title is still used by the textwriters. I pose this question: Why should a bastardy action be maintained against Baker when the child was born in lawful wedlock and he admits his parentage?
When this Court is called upon in such a case as this to interpret a statute, we are asked to somehow read the collective mind of the legislative body and determine its intent behind the particular law in question. And, while recital of the criterion "intent of the legislature" is easily accomplished, the actual act of interpretation is a difficult task indeed. However, without hesitation, I respectfully submit that in no way could the legislature have intended Miss. Code Ann. § 93-9-9 (1972) to permit such a cause of action as this.
I would affirm the lower court in dismissing the complaint. As stated, our statutes entitled "Uniform Law on Paternity" and its predecessor entitled "Bastardy" were adopted for the purpose of allowing a child, its mother or a public authority chargeable by law for the support of the child, to enforce support from the father. I am unable to find any prior action filed under this chapter of our Code that has as its purpose a determination of paternity when the child is born in lawful wedlock. This is an action aided and abetted by the mother to have the court select the individual as the father that is most acceptable to the mother. There is no good reason for such litigation and it should not be sanctioned by this Court. I do not believe it was necessary for the chancellor to find estoppel, res judicata or laches, certainly these defenses would apply to the mother; however, he reached the right result.
The majority opinion would allow the mother to place the cloak of illegitimacy on her child so that she could wear the name of her present husband. Some advance the view that the child is entitled to know who her father is. Certainly she would not be expected to believe the word of a chancellor any quicker than she would the word of her mother. There is no good societal reason for entertaining such an action as this, and it should be against public policy, as I believe Justice Griffith noted in Graham v. Lee, supra.
The child is better off in the present state of things. Now she has a father who supports and cares for her, as well as a stepfather with the same attitude. If we follow the course of action that her mother apparently wants us to, she can no longer inherit from her father. We will not have improved her state in life. By rejecting this action, we have not hurt the stepfather. If he truly loves the child, he may express that love in many different ways, including adoption when she reaches the age of majority, and do so without the consent of Baker. Certainly he may include her in his will and make gifts to her.
I respectfully submit that this proceeding is not in the best interest of the child but against her interest.
WALKER, C.J., HAWKINS, P.J., and ANDERSON, J., join in this dissent.
NOTES
[1] Human Leukocyte Antigen Tests, sometimes spelled as Human Leucocyte Antigen Tests.
[2] This Court recognizes that in all cases, any child born to the marriage of a man and woman is presumed legitimate and issue of that marriage, and does not imply that a guardian ad litem must be appointed for minors in every domestic relations case.
[1] Compare, Natural Father v. United Methodist Children's Home, 418 So.2d 807 (an opinion by Judge Broom holding that portion of statute allowing parental rights termination upon a preponderance of the evidence is deficient and unconstitutional in that it allows parental rights termination to be decreed based upon a preponderance of the evidence rather than standard of at least clear and convincing evidence. Code 1972, § 93-15-109; U.S.C.A. Const.Amend. 14.)