# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00946-SCT

*DEPARTMENT OF HUMAN SERVICES, STATE OF MISSISSIPPI*

*v.*

*MELVIN GADDIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/97 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | MARION COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PAUL B. CASTON |
| ATTORNEY FOR APPELLEE: | DEBORAH J. GAMBRELL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 12/31/1998 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/3/99 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE FACTS AND CASE

¶1. On October 5, 1996, Denice Quinn applied for and later began receiving public assistance from the Department of Human Services (" DHS") for herself and her three minor children. In applying for these benefits, Quinn was required to identify the father of any children for whom the assistance was to be received. Although she was married to Danny Quinn at the time of the birth of all three children, Quinn identified Melvin Gaddis as the biological father of her three children.

¶2. Upon receiving this information, DHS filed a complaint to determine the paternity of the three minor children and to establish a child support obligation for them. DHS's complaint named both Danny Quinn and Melvin Gaddis as defendants and alleged that Melvin Gaddis was the true biological father of the children in spite of Danny Quinn's legal presumption of paternity. DHS also filed a motion for genetic testing of Danny Quinn, Denice Quinn, Melvin Gaddis, and the three children in order to establish paternity. All of the parties except Gaddis complied with the judge's order granting these tests, and the results showed with high probability that Danny Quinn could not be the biological father of the three minor children.

¶3. Gaddis filed a motion to dismiss, alleging that DHS lacked legal standing to bring an action to determine paternity against him. The Chancellor agreed, dismissing DHS's suit and denying DHS's motion to reconsider. DHS timely appealed to this Court.

## ISSUE

**Where children are receiving public assistance from the Department of Human Services, does the Department of Human Services have legal standing to bring an action against an alleged father to determine the paternity of those children, where the children are presumed to be the legitimate children of their mother's husband by virtue of having been born to a lawful marriage. Stated differently, does the Department of Human Services have legal standing to challenge the presumption of legitimacy of children for whom it is providing support in order to establish support in order to establish paternity in one alleged to be their true biological father**?

¶4. The present appeal presents solely a question of law, and it is well established that this Court reviews questions of law on a *de novo* basis. The issue in the present case is whether or not DHS has legal standing to bring a suit to determine the paternity of children born to an existing marriage. It is well settled that children born within wedlock are legally presumed to be the natural children of the husband of the mother. ***Stone v. Stone***, 210 So.2d 672 (Miss. 1968). This presumption, while strong, is a rebuttable one, and DHS asserts that it has legal standing to rebut this presumption through the establishment of paternity.

¶5. DHS's position is supported by Miss. Code. Ann. § 93-9-9(1), which provides that:

(1) Paternity may be determined upon the petition of the mother, or father, the child or any public authority chargeable by law with the support of the child ...

In the view of this Court, DHS clearly constitutes a "public authority chargeable by law with the support of the child," and case law indicates that this statute applies equally to cases in which the children are legally presumed to be legitimate.

¶6. In ***Baker by Williams v. Williams***, 503 So.2d 249, 252 (Miss. 1987), this Court, in discussing MCA § 93-9-9(1), noted that "it can be determined that the legislative intent for its passage was to provide a method for determining paternity of illegitimate children to enforce support." Significantly, this Court in *Williams* held that "the Court can find no prohibition for a presumed legitimate child's use of the statute to establish the fact of paternity when, as here, (1)the child is properly before the Court through her next friend and (2) alleges facts to support her claim." *Williams*, 503 So.2d at 252. This Court in *Williams* thus concluded that a child, as one of the parties given a right to determine paternity under § 93-9-9(1), has the right to establish paternity in spite of the existence of any legal presumption of legitimacy.

¶7. There is similarly no basis for this Court to conclude that the presumption of legitimacy should bar DHS from utilizing the authority granted to it by § 93-9-9(1) to establish the true paternity of the children. As noted in *Williams*, the Legislature's purpose in enacting the statute was to facilitate child support enforcement, and it is apparent that DHS is attempting to utilize the statute for precisely this purpose.

¶8. The Chancellor stated in his ruling that:

> If the presumption (of paternity) is to be rebutted, that undertaking becomes the burden of the one who is the presumptive father, not some other party (DHS here). If DHS desires to recover moneys spent by it to support these children, it is obliged, as a matter of law, to proceed against that person or those persons who are legally liable for the support of the children - - in this case, Quinn, the lawful husband of Denice and the legally presumed father of her children. Quinn is the person who has the right to undertake to rebut the presumption of paternity, and that is not the business of DHS or any other party.

The Chancellor's view is not supported by § 93-9-9(1), which does in fact grant DHS the right to determine the paternity of the three children. The Chancellor's conclusion that the paternity of the children is "not the business of DHS" is unsupported by either statute or by considerations of sound public policy. Given that Gaddis has, apparently, fathered three children by the wife of another, it is not at all unreasonable to permit the DHS to recoup some or all of the public's cost of supporting these children from the children's biological father. As such, determining the paternity of the children is very much the "business" of DHS. The Chancellor's ruling was erroneous as a matter of law and is reversed.

¶9. **REVERSED AND REMANDED.**

**BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶10. The majority misses the point at issue in this case. The majority grants DHS leave to challenge paternity even where the presumed father, as here, does not challenge his assumed role. Such behavior by DHS may lead to destruction of the presumption of *Stone v. Stone*, 210 So. 2d 672 (Miss. 1968), while devastating the emotions and lives of the family members involved. Before DHS crumbles the foundation of a family, it should test the presumed father and attain probable cause that someone else should be tested.

¶11. In the instant case, the married spouse at the time the children were born should have been tested. Then, only after such spouse had been excluded as the father and upon probable cause, Gaddis should have been tested. The suit should have only been brought against Gaddis. The lawsuit may have harmed family relations and, regardless of other issues, there is solely probable cause to sue Gaddis. The father's test results show him to likely not be the father while Gaddis failed to comply with the testing order.

¶12. Accordingly, I dissent.

**SULLIVAN AND PITTMAN, P.JJ., JOIN THIS OPINION.**