# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01576-SCT
## CONSOLIDATED WITH
## NO. 2001-CA-01917-SCT

*MISSISSIPPI DEPARTMENT OF HUMAN*
*SERVICES ON BEHALF OF VICKIE ALLEN AND*
*THERESA HAGLER*

*v.*

*WILLIAM SANFORD*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/25/2001 |
| TRIAL JUDGE: | HON. JOHNNY LEE WILLIAMS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | SUSAN ELAINE LUSHER |
| ATTORNEY FOR APPELLEE: | CHRISTOPHER M. HOWDESHELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 5/08/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., DIAZ AND COBB, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.    This appeal arises from multiple paternity actions to determine whether William Sanford is the father of twin children. On appeal, the Mississippi Department of Human Services (DHS) raises the following issues: (1) whether a dismissal with prejudice in an action brought in the interest of the mother to determine paternity should bar a subsequent action brought by the guardian, in the interest of the children; (2) whether a dismissal with

prejudice, entered without the benefit of a hearing on the merits or the performance of genetic testing, should be set aside when the best interests of the children outweigh the prejudice to the alleged father; (3) whether the affidavit of the mother should have been stricken; and (4) whether attorney's fees should have been awarded to the alleged father.

## FACTS

¶2.     On November 7, 1988, the DHS, pursuant to Miss. Code Ann. § 43-19-35, filed a petition in the Hinds County Chancery Court to determine whether Sanford was the biological father of Joshua and Brandon Allen, twins born on November 20, 1986.   On December 20, 1989, the chancery court dismissed the action without prejudice finding that Vickie Allen, the mother, failed to cooperate with the genetic testing.

¶3.     Subsequently, Allen and the twins moved to Tennessee, and Tennessee's child support department sought a determination of paternity.  Pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA), a petition was filed in Forrest County, Mississippi, and the Chancery Court of Forrest County entered an order for genetic testing.  On August 13, 1993, that court entered an order of dismissal with prejudice, finding that Allen had failed to cooperate with the genetic testing.  This action was apparently closed by the State of Tennessee based on its inability to contact Allen, the mother.  No further action was taken until March 1999.

¶4.     On March 16, 1999, in a juvenile court in Tennessee, Theresa Hagler was appointed guardian ad litem for the twin children.  On April 28, 1999, pursuant to the Uniform Interstate Family Support Act (UIFSA), Hagler filed a petition to determine whether Sanford was the twins' biological father.  The new support petition was first filed in the Chancery

2

Court of Lamar County and later transferred to the Chancery Court of Forrest County by order dated June 26, 2000. On April 24, 2001, DHS filed a motion to compel individuals to submit to genetic testing, or, in the alternative set aside the 1993 dismissal order.

¶5. On June 27, 2001, the chancery court dismissed the UIFSA petition after finding that it was barred by the 1993 order of dismissal. The court also denied the DHS motion for genetic testing, struck an affidavit attached by the mother, and assessed attorney's fees against the State of Tennessee child support office. DHS filed a motion for reconsideration and/or for new hearing, which was denied by order of the chancery court on August, 17, 2001. Thereafter, DHS filed a motion to amend the judgment on January 11, 2002. According to Sanford's brief, the children are now 15 years old.

## DISCUSSION

¶6. In domestic relations matters, chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. *Miss. Dep't of Human Servs. v. Shelby*, 802 So. 2d 89, 92-93 (Miss. 2001).

> **I.   WHETHER A DISMISSAL WITH PREJUDICE IN AN ACTION BROUGHT IN THE INTEREST OF THE MOTHER TO DETERMINE PATERNITY SHOULD BAR A SUBSEQUENT ACTION BROUGHT BY THE GUARDIAN, IN THE INTEREST OF THE CHILDREN.**

¶7. Sanford asserts that the 1993 order dismissing the matter with prejudice was based on the findings by the chancery court that the mother of the children had initiated paternity actions through DHS on three separate occasions and had failed to cooperate in blood testing on each occasion, even though Sanford had taken blood tests on at least two occasions.

3

Sanford asserts that the chancellor properly determined that the system had been abused and that dismissal with prejudice, although normally a harsh remedy, was the appropriate remedy for such abuse. Sanford argues that the 1993 order was never collaterally attacked or appealed until DHS filed its motion in July 2001. Sanford also argues that in 2001 the chancellor correctly dismissed the petition based on res judicata and collateral estoppel.

¶8. Res judicata applies when the following four identities are present: (1) the subject matter of the action; (2) cause of action; (3) the parties to the cause of action; and (4) the quality or character of a person against whom a claim is made. *Little v. V & G Welding Supply, Inc.*, 704 So. 2d 1336, 1337-38 (Miss. 1997).

¶9. DHS contends that the URESA petition and the subsequent UIFSA petition were separate actions brought by separate parties. The URESA claim was brought for the mother, while the UIFSA claim was brought for the benefit of the children by their appointed guardian. DHS maintains that it does not maintain an attorney-client relationship with any individual according to Miss. Code Ann. § 43-19-35(3). This Court has stated that to bar a subsequent action, not only must the court determine whether the parties are substantially identical but also whether the entire circumstances would bar such an action. *Hogan v. Buckingham ex rel. Buckingham*, 730 So.2d 15, 18 (Miss. 1998).

¶10. This Court has held that the interest of the minor child and its mother are not substantially identical. *Baker ex rel. Williams v. Williams*, 503 So.2d 249, 254 (Miss. 1987). In *Williams*, this Court stated that a divorce decree did not bar a subsequent action by the minor child to establish paternity against her biological father. *Id.* The minor child in that case was not a formal party to the divorce action; therefore, she was not bound by the

4

paternity determination in the divorce decree. Based on this Court's conclusion in *Williams*, DHS contends that the twin children were not parties to the prior action and therefore should not be bound by that dismissal with prejudice.

¶11.	DHS further contends that the identity of interest of the parent and child are separate. Citing Arizona law, DHS discusses the differing interests of the state, the mother, and the child. *Hall v. Lalli*, 977 P.2d 776, 780-82 (Ariz. 1999). The interest of the state is primarily for tax purposes; the interest of the mother includes financial, emotional and psychological benefits gained from assistance in rearing the child; while, according to Arizona law, the interest of the child exceeds the interest of the state and the mother. *Id.* The child's interest includes the right to inherit, the right to medical support, the right to dependent benefits from worker's compensation or veteran's affairs along with a more accurate knowledge of his family medical history, the development of relationships with the paternal family, and education in the child's cultural heritage. *Id.*

¶12.	In a Washington case several paternity actions were brought in the name of the state, the mother, and the child to establish paternity. *In re Burley,* 658 P.2d 8 (Wash. Ct. App. 1983). The court held there was a separate and independent interest for the state, the parent, and the minor child in establishing paternity and held there was a lack of identity in the parties so that res judicata would not bar the claim of the minor child.

¶13.	In determining whether prior multiple dismissals of paternity actions should have been a bar against a subsequent action, a Wisconsin court held that the interest of the mother, child, and state can be significantly different and could actually be conflicting. *In re Paternity of Chad M.G.,* 535 N.W.2d 97 (Wis. Ct. App. 1995). For example, the mother

5

might desire to avoid a continued relationship with the father. *Id*. *See Hall*, 977 P.2d at 781 (listing other possible conflicting interests).

¶14. On the other hand, Sanford argues that because the intent and purpose of each of the actions brought through the varying statutes was the same, to establish paternity and enforce child support payments, the requirement of identity of the cause of action is met.

¶15. The trial court erred in finding that the paternity action brought by the children, through their guardian, was barred by collateral estoppel and res judicata. The law in Mississippi states that the interests of the mother and children can be separate with regard to paternity actions. The twin children in this case should not be faulted for the mother's failure to cooperate with the genetic testing. This Court has allowed the reopening of paternity actions despite the doctrine of res judicata; in addition, genetic testing has been performed in the name of equity. *R.E. v. C.E.W.*, 752 So. 1019, 1023 (Miss. 1999); *W.H.W. v. J.J. ex rel. Povall*, 735 So.2d 990, 992 (Miss. 1999); *Williams*, 503 So.2d at 254. The children should be considered a separate party from the mother; therefore, they are not barred by the 1993 order. Furthermore, because there has not been a determination of paternity on the merits, the paternity action should be allowed to proceed in the interest of equity and in the best interests of the children. Otherwise, the resulting prejudice to the children would be much greater than any prejudice to the putative father.

    **II.    WHETHER A DISMISSAL WITH PREJUDICE, ENTERED WITHOUT THE BENEFIT OF A HEARING ON THE MERITS OR THE PERFORMANCE OF GENETIC TESTING, SHOULD BE SET ASIDE WHEN THE BEST INTEREST OF THE CHILDREN OUTWEIGH THE PREJUDICE TO THE ALLEGED FATHER.**

¶16. Based on our conclusion in Issue I, there is no need to set aside the 1993 order of dismissal. The 1993 order of dismissal, as noted above, was based on an action brought in the interest of the mother. The latest paternity action has been brought by the children's guardian and in the interest of the children. Also, as discussed in Issue I, paternity actions can be reinitiated despite collateral estoppel and res judicata.

¶17. DHS states that in *Mississippi Department of Human Services v. Helton*, 741 So.2d 240 (Miss. 1999), this Court discussed that in an action to which a child is a party, the court's paramount concern is to protect the best interest of the child versus the actual prejudice to the alleged father. This Court, in *Helton*, cited *Molden* for the proposition that "a mere delay in asserting the right to determine parentage is not sufficient to deprive the child of his day in court." *Miss. Dep't of Human Servs. v. Molden*, 644 So. 2d 1230, 1233 (Miss. 1994). In *Molden*, the passage of 12 years did constitute actual prejudice to the father.

¶18. Sanford alleges that he has been prejudiced by the multiple litigation resulting in the necessity of retaining legal counsel, the years lost in establishing a relationship with his children, and the submission of his genetic sample of separate occasions.

¶19. DHS, on the other hand, argues that its conduct, as supported by the finding in *Helton*, should not be attributable to the minor child. In addition, the mother's failure to submit to the genetic testing, which resulted in the alleged prejudice, should not be held against the twin children. The mother has alleged that at the time DHS sought to perform genetic testing on her, she was unaware of her appointments due to the fact that she had moved away. Also, due to advances in DNA testing, the genetic testing can now be performed without the mother's sample.

¶20. DHS asserts that the order with prejudice should be overturned due to the fact that there has not been a determination of paternity on the merits. Further, according to **Helton**, a "dismissal with prejudice is an extreme measure," and a trial on the merits is always preferred. **Helton**, 741 So.2d at 244. In our opinion, the order should have been granted without prejudice, in order to protect the interest of the children. Regardless, this Court submits that the interest of children, as discussed in Issue I, should not be determined or fated by the mother's failure to protect her own interest.

### III. WHETHER THE AFFIDAVIT OF THE MOTHER SHOULD HAVE BEEN STRICKEN.

¶21. Since this Court finds that the paternity action was not barred by collateral estoppel or res judicata, the mother's affidavit would not contain any relevancy to the new paternity action. Given this Court's conclusion that the trial court erred, this issue need not be discussed in detail.

### IV. WHETHER ATTORNEY'S FEES SHOULD HAVE BEEN AWARDED TO THE ALLEGED FATHER.

¶22. Sanford asserts that the award of attorney's fees was proper because the Tennessee Child Support Office pursued the action with full knowledge that it had been previously dismissed with prejudice and that order had not been collaterally attacked or appealed. This Court finds that the paternity suit brought by the children was a separate action not barred by res judicata. Thus, the award of attorney's fees must be overturned.

¶23. In *Mississippi Department of Human Services v. Shelby*, 802 So.2d 89 (Miss. 2001), this Court held that an award of attorney's fees based on an implicit finding that an action was frivolous was not proper. DHS argues that this action was not improper, as DHS had

8

a good faith belief that res judicata would not bar the subsequent action brought in the interest of the children. Additionally, the State of Tennessee is federally mandated to establish paternity for children born out-of-wedlock and should not be penalized for its actions.

## CONCLUSION

¶24. Based on the foregoing reasons, this Court reverses the chancery court's judgment of dismissal and judgment awarding attorney's fees to Sanford and remands this case for further proceedings consistent with this opinion.

¶25. **REVERSED AND REMANDED.**

**SMITH, P.J., COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J., SMITH, P.J., AND CARLSON, J.**


**WALLER, JUSTICE, CONCURRING:**

¶26. I agree with the majority opinion, but I wish to point out that the DHS should have filed a Rule 60(b)(6)[1] motion to reopen the 1993 judgment instead of filing multiple lawsuits. If this had been done, the issue of res judicata/collateral estoppel would never have arisen. The DHS lawsuits were dismissed because the mother did not participate in genetic testing. New technology now exists that allows genetic testing to be performed without a mother's participation. This alone is reason enough to re-open the old judgment. DHS's multiple filings have created problems for all concerned and have needlessly consumed the precious

---

[1]M.R.C.P. 60(b)(6) provides that a judgment may be reopened for "any . . . reason justifying relief from the judgment."

9

time and resources of the parties and the courts.  While dismissal is too severe a penalty, other sanctions against the DHS may be appropriate.

**PITTMAN, C.J., SMITH, P.J., AND CARLSON, J., JOIN THIS OPINION.**