GRAVES *v.* GAMBRELL.

(Division B.   Jan. 2, 1939.)

[185 So. 238.   No. 33472.]

J. W. P. Boggan, of Tupelo, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, Miss Graves, filed a bastardy proceeding in the Circuit Court of Lee county against M. B. Gambrell, alleging him to be the father of her child, for whom she seeks support. The testimony on behalf of plaintiff was to the effect that the defendant, M. B. Gambrell, at that time a single man, began going with her about the middle of May, 1936; and that on the last Saturday night of May they had sexual relations, which continued at intervals from that date until about the first of October. The defendant, M. B. Gambrell, married another woman in November, 1936. The child was born on the last day of February, 1937. In the early part of that month a proceeding was instituted in the justice of the peace court. It appears that the plaintiff and her brother-in-law both testified in court at that time that the defendant began going with the plaintiff about the middle of June; but later both testified that this was a mistake—that they began going together in May, and that the act occurred on the last Saturday night of that month. Several other witnesses corroborated plaintiff's testimony in regard to the time the defendant began to go with her, placing it near the middle of May, the time being fixed in their memory by the fact that it was cotton-chopping time. The brother-in-law and sister of plaintiff testified to the fact that on the last Saturday night in May the plaintiff and defendant went out of the house and remained about an hour; the plaintiff testified that they went to the car shed or garage on her father's place near the house, and that the act took place there.

There was no testimony showing illicit relations between the plaintiff and any other man, and her reputation for chastity theretofore was not attacked. She stated that occasionally other young men called at her home, but that no such relation existed with any of them.

The defendant, Gambrell, took the stand, testifying in

his own behalf; admitted having had illicit relations with the plaintiff, but testified that the first act occurred on June 27th, not in May; that he did not go with the plaintiff in May of that year. He testified that the relations continued until about the first of October—that he did not remember the number of occasions.

Two physicians were introduced, one who attended the plaintiff in childbirth; the attending physician testified that the child was apparently normal; that the period of gestation usually was 280 days, the time being counted from the date of the last menstruation; but that conception could take place at any time during that period, counting from the last menstruation. One of the physicians testified that the period of gestation began with conception, and that the period of gestation would be from 275 to 280 days for a normal child. One physician testified that there could be a variation of two weeks in a normal case, according to the age of the woman and the condition of her health.

A young couple living on the place of plaintiff's father, near his residence, testified that the defendant visited the plaintiff from the middle of May until some time in August. From the testimony of both plaintiff and defendant it appears that if their relations continued after August, the defendant had quit going to the house, and they were meeting elsewhere. The plaintiff testified that she realized that she was pregnant about the third week in July, but that she only told the defendant of it about the first of October.

One of the young men alleged to have visited the Graves home occasionally in company with a friend, calling on the two sisters, both of whom were then single, testified that there was no intimate friendship between him or his friend and the girls—they were merely casual visitors. Another testified that he just went there with the crowd, or "bunch," as he expressed it, neither he nor his friend having any intimate relations with the girls.

In this condition of the evidence the court gave several instructions, which were assigned for error. The motion for a new trial was made, embracing the alleged error in giving these instructions, and also alleging that the verdict of the jury was contrary to the evidence.

Instruction No. 3 for the plaintiff reads as follows: "The court instructs the jury for the defendant that although you may believe from the evidence in this case that defendant indulged in an alleged act of intercourse with plaintiff on night of June 27th, 1936, yet unless you are further reasonably satisfied by a preponderance of the evidence that the child in question was born to plaintiff as a result of said act of intercourse between plaintiff and defendant then the court instructs you that it is your sworn duty to find for the defendant and the form of your verdict will be: 'We the jury find for the defendant.' " This instruction is misleading and erroneous.

The second instruction complained of is No. 5, which reads as follows: "The court instructs the jury that if there is any fact in this case that arises out of the evidence that prevents you from being reasonably satisfied that defendant is the father of the child in question then it is your sworn duty to return a verdict for the defendant and the form of your verdict will be: 'We the jury find for the defendant.' " The error in this instruction is that it instructs the jury "that if there is any fact in this case that arises out of the evidence that prevents you from being reasonably satisfied that defendant is the father of the child in question, then it is your sworn duty to return a verdict for the defendant." This instruction does not embrace the whole evidence, but singles out that "if there is any fact" which of itself would be sufficient to prevent their being satisfied they should so find, without considering that fact in connection with the other evidence.

Instruction No. 6, also complained of, reads as follows: "The court instructs the jury for the defendant that you

may take into consideration in arriving at your verdict in this case the fact that plaintiff associated with other men at or about the time of the period of gestation in this case; her opportunities to have sexual intercourse with such other men; and the circumstances under which such opportunities existed or arose and the court now instructs you that if you are not reasonably satisfied by a preponderance of the evidence in this case or by reason of a lack of evidence in the case that defendant is the father of the child in question then it is your sworn duty to return a verdict for the defendant and the form of your verdict will be: 'We the jury find for the defendant.' '' We think this instruction is erroneous because it is not applicable to the evidence in the case. There is no proof which warranted the jury in believing that she had inclination or opportunity for sexual intercourse with other men; nor are there other circumstances in the proof from which that fact could reasonably be deduced.

The next instruction complained of reads as follows: ''The court charges the jury for the defendant that the normal period of gestation is commonly accepted and taken to be 280 days from the date of conception, for a normal child to be born, and that this child was a normal child at birth, and unless the plaintiff has proven by a preponderance of the evidence that defendant had an act of sexual intercourse with her on the last Saturday night in May, 1936, then it is your sworn duty to return a verdict for the defendant.'' This is erroneous in that it tells the jury that it is a commonly accepted fact that 280 days is the normal period of gestation, and that if they believe the child was normal at birth, unless plaintiff has proven by a preponderance of the evidence that defendant had such intercourse with her on the last Saturday night of May, 1936, it was their sworn duty to return a verdict for the defendant. While it is true that the testimony of the plaintiff was to the effect that the act occurred on the last Saturday night in May, and the

defendant testified that it took place on the last Saturday night in June, the proof also shows that after the beginning there were frequent repetitions of the relation between plaintiff and defendant; and a mistake in the date would not necessarily mean that the defendant was not the father of the child. Too much emphasis is placed on the date. One of the physicians, as stated, testified that there could be a variation of as much as two weeks in the gestation period; and also that the period would be counted from the last date of menstruation.

These instructions are erroneous and misleading.

In cases of this kind the proof need only amount to a preponderance of the evidence to establish the probability. Placing the evidence in this case in the class of probability, it seems to us that it is sufficient to establish the fatherhood of the child in the appellee—even beyond reasonable doubt. There is no other reasonable deduction, it seems to us, to be drawn from all the facts. The defendant himself admitted the relationship, and produced no proof which would reasonably indicate another as the father of the child. Instead of lending plaintiff his name after causing her ruin, he married another without waiting to see the result of his act. Where one seeks to enjoy single blessedness and connubial bliss, the result may be disastrous—as in this case. The child, innocent of wrongdoing, is brought into the world handicapped by disabilities under the law, and clothed in the garments of shame. A woman apparently of previous good reputation has been degraded and humiliated. She receives the scorn of the upright, the jeers of the thoughtless, and the leers of the lascivious. One of the inhumanities of the law, coming down from remote ages, is the fastening upon the innocent child the disabilities of bastardy, because of which it cannot inherit from the father, or through his blood from any of his relatives, and the child must suffer all the social and legal handicaps that flow from the wrong of its parents, without any

fault on its part. It is deprived of the means of physical comfort that money would buy, and of the advice and fatherly love a child so greatly needs. There should be a sterner justice in the law on this subject. Surely, somewhere in the volumes of the law there should be some chosen curse, some hidden thunder red with uncommon wrath, to blast the hopes of him who seeks pleasure in a maiden's ruin.

We think the court was in error, and the judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.