449 So.2d 779 (1984)
Harold IVY
v.
STATE DEPARTMENT OF PUBLIC WELFARE, State of Mississippi.
No. 54173.
Supreme Court of Mississippi.
April 11, 1984.
*780 Stephen P. Livingston, New Albany, for appellant.
Billy N. Owen, Ripley, for appellee.
Before ROY NOBLE LEE, PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
This suit by the State Department of Welfare against Harold Ivy to establish paternity and seek support for a minor child was brought pursuant to Mississippi Code Annotated section 43-19-31 (1972) (Supp. 1983). Harold Ivy appeals the judgment of the Chancery Court of Marshall County, Anthony Farese presiding, establishing paternity and ordering Ivy to pay $30.00 per month child support. We affirm.
The standard of proof required of the State Department of Welfare is questioned here.

I.
In July, 1974 Earnistine Pegues, mother of Rapheal Pegues, began dating Harold Ivy. Ivy admitted having sexual relations with Pegues numerous times, although he suggested that these occurrences were considerably less in number than testified to by Miss Pegues.
In April, 1975, Miss Pegues became pregnant and advised Ivy of this fact. Mr. Ivy admitted being told of the pregnancy sometime in December, 1974, at a time when Miss Pegues was four or five months pregnant, but admitted being unsure about the time of this disclosure. Likewise, he admitted his asking whether he needed to pay the medical bills, but denied asking if they would have to get married. Ivy stated that he last had sexual relations with Pegues in July, 1974 and was not with her at all in January, 1975.
On September 8, 1975 Miss Pegues gave birth to Rapheal. She first applied for aid for dependent children (ADC) support from the State Department of Public Welfare on October 14, 1975, naming Harold Ivy as the father. Review of her application occurred every six months, and each time she named Ivy as the father.
Miss Pegues admitted having sexual relations with three other men during that period from 1974 through 1975. The first of these relations occurred in early 1974 and the latter two occurred in 1975, after Rapheal was born.
The chancellor found that Miss Pegues' testimony was more credible and accurate based on the physical evidence. Ivy was unsure about the time periods of his relationship with Pegues, specifically, the month in which he claimed he was told of the pregnancy. The chancellor's reasoning was that if Miss Pegues was four or five months pregnant in December, 1974, then the baby would have been born in April or May, 1975. Instead the baby was born in September, 1975, which led to the conclusion that impregnation was probably in January, 1975.

II.
We first address the authority of the State Department of Public Welfare to bring this action. Mississippi Code Annotated section 43-19-31 (1972) (Supp. 1983), states:
The state department of public welfare is hereby authorized and empowered to establish a single and separate child support unit for the following purposes:
(a) To develop and implement a nonsupport and paternity program and institute proceedings in the name of the state department of public welfare or in the name of the recipient ...
(b) To secure support and establish paternity for any child or children receiving aid from the department, from a parent or any other person legally liable for such support who has either failed or refused to provide support, deserted, neglected or abandoned the child or children, ...
... .
(e) To obtain restitution of moneys expended for public assistance from a parent or any other person legally liable for *781 the support of any child or children receiving aid from the department... .
Mississippi Code Annotated section 43-19-35 (1972) (Supp. 1983), also provides in part that:
(1) By accepting public assistance for and on behalf of a child or children, the recipient shall be deemed to have made an assignment to the state department of public welfare of any and all rights and interests in any cause of action, past, present or future, that said recipient may have against any parent failing to provide for the support and maintenance of said minor child or children for the period of time that assistance is being paid by said department; said department shall be subrogated to any and all rights, title and interest the recipient may have against any and all property belonging to the absent or nonsupporting parent in the enforcement of any claim for child support, whether liquidated through court order or not. The recipient shall also be deemed, without the necessity of signing any document, to have appointed the state department of public welfare to act in his or her name, place and stead to perform the specific act of instituting suit to establish paternity or secure support, collecting any and all amounts due and owing for child support, and endorsing any and all drafts, checks, money orders or other negotiable instruments representing child support payments which are received on behalf of the child or children, and retaining any portion thereof permitted under federal and state statutes as reimbursement for public assistance moneys previously paid to the recipient.
Statutes such as the ones above passed by our Legislature can be traced back to the Elizabethan Poor Law of 1576 (18 Eliz. I, c. 3). This ancient law represents the progenitor of modern paternity suits where the purpose was not solely for the protection of the child, but rather the indemnification of the parish for the expense of the child's support. Clark, Law of Domestic Relations, 162 (1968); Commissioner of Social Services of City of New York v. Bailey, 79 A.D.2d 572, 434 N.Y.S.2d 24 (1980).
Cases interpreting statutes similar to ours indicate that the purpose behind their enactment was "to protect the state's interest when it appears likely that the child is or will become a public charge... ." or to "see that (T)hey did not become wards of the state." State Ex Rel. Adult and Family Services Division v. Gilliland, 54 Or. App. 283, 634 P.2d 820 (1981); Fox v. Hohenshelt, 19 Or. App. 617, 528 P.2d 1376 (1974); D.S.S. v. Wolfe, 70 Misc.2d 590, 334 N.Y.S.2d 689 (1972). It has also been stated that such statutes are intended to "protect the public purse." Commissioner of Social Services of City of New York v. Bailey, supra.
It is clear under our statutes that the state through the Department of Public Welfare may institute paternity proceedings to obtain repayment for support of a dependent child under the Aid to Dependent Children Program (ADC) from the person legally obligated to pay this support.

III
The question presented here is what standard of proof is required of the Department of Welfare to prevail in such support proceedings.
Appellant argues to this Court that the chancellor was manifestly wrong in his decision because the Department of Welfare's case was not proved by clear and convincing evidence, which standard is argued to be the applicable one under another statute Mississippi Code Annotated section 91-1-15 (1972) (Supp. 1983), Descent Among Illegitimates.
The filing of a paternity suit is usually for one of two reasons. The purposes are to establish an illegitimate child's right of heirship from the putative father and to secure child support payments.
By statute, the standard of proof in an heirship proceeding brought after the death of an intestate is based upon clear and convincing evidence. Mississippi Code *782 Annotated section 91-1-15 (1972) (Supp. 1983).
However, section 91-1-15 makes a distinction between paternity proceedings brought before the death of the intestate and such proceedings brought after the death of the intestate, stating in part:
(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
* * * * * *
(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child. No claim of inheritance based on an adjudication of paternity, after death of the intestate, by a court outside the State of Mississippi shall be recognized unless:
* * * * * *
(iv) Paternity or legitimacy was established by clear and convincing evidence. (Emphasis added).
In Crosby v. Triplett, 195 So.2d 69 (Miss. 1967), an action was brought to have plaintiff, Edna Crosby, recognized as an heir at law of the deceased, Robert Triplett. Triplett died intestate leaving as his sole surviving heir, his wife Carrie Triplett. Plaintiff Edna Crosby contended that she was an illegitimate daughter of Robert Triplett and that before his death he had acknowledged her as his daughter, thus making her Robert Triplett's legitimate child.
Under these facts, this Court held that: "The evidence to support a finding of paternity must be clear, convincing and unambiguous." (Id. at 71). Finding that the evidence was clear, convincing and unambiguous, the court reversed and rendered judgment for the plaintiff.
Clearly in an heirship proceeding instituted after the death of an intestate, the burden of proof upon a plaintiff is by clear and convincing evidence. Mississippi Code Annotated section 91-1-15 (Supp. 1983). Appellant urges that the same burden should be upon the Department of Public Welfare here in a support suit. The reason given for this position is that the paternity adjudication in the support action also establishes the paternity issue for an heirship proceeding. The timing of these actions  one during the lifetime of a person and the other one after the death of an intestate  justifies the imposition of different burdens of proof.
This Court has held in cases such as the one sub judice where the purpose is to seek support for the child, during the lifetime of the putative father, the burden of proof has been held by this Court to be by the preponderance of the evidence. Hull v. Jackson, 238 Miss. 870, 121 So.2d 4 (1960); Graves v. Gambrell, 184 Miss. 61, 185 So. 238 (1939); Welford v. Havard, 127 Miss. 88, 89 So. 812 (1921).

IV.
We reaffirm the holding in Crosby v. Triplett, supra, stating that the standard of proof in heirship cases brought after death of the father is by clear convincing and unambiguous evidence. However, where the paternity proceeding is brought before the death of the putative father to establish a right to child support the standard of proof is by the preponderance of the evidence. This interpretation is in line with both our former decisions and also Mississippi Code Annotated section 91-1-15 (1972) (Supp. 1983).
*783 This Court will reverse a chancellor only when he is manifestly wrong. Harris v. Sellers, 446 So.2d 1012, (Miss. 1984); Voss v. Stewart, 420 So.2d 761 (Miss. 1982); Richardson v. Riley, 355 So.2d 667 (Miss. 1978). Noting the appellant's uncertainty about important dates, we cannot say that the chancellor here was manifestly wrong when he decided that the evidence favored the appellee by the preponderance of the evidence, since the mother's testimony was corroborated by the physical facts. The preponderance of the evidence supported the chancellor's finding.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, DAN M. LEE, ROBERTSON and SULLIVAN, JJ., concur.