526 So.2d 518 (1988)
In the Matter of the Adoption of Natasha KARENINA,[1] a Minor, By Kiril VRONSKY
v.
Lynn PRESLEY, Chancery Clerk, et al.
No. 58386.
Supreme Court of Mississippi.
April 6, 1988.
*519 Robert W. Smith, Biloxi, for appellant.
Dempsey M. Levi, Levi & Denham, Ocean Springs, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appeal asks this Court to decide who in fact and in law is the father of a now eleven year old young girl. The question arises in the context of a paternity action and an adoption petition which were consolidated for trial. In the end, we recognize the father in law to be he who it has been shown beyond a reasonable doubt is the father in fact, and in this we affirm the decision of the Chancery Court.
We reverse in part and remand for further consideration certain matters regarding assessment of fees and costs.

II.

A.
Konstantin Levin is an attorney having his office on the Mississippi Gulf Coast. In the fall of 1975, Konstantin[2] met, and later hired as his secretary, Anna Karenina. At the time each was married to another person. Konstantin and Anna fell in love and began having what is euphemistically referred to as an affair. During this time Anna's husband, Alexander Karenin, was out of the country and in the Netherlands.
*520 As fate would have it, Anna became pregnant. She and Konstantin discussed abortion but decided against that alternative. During this time Konstantin and Anna were virtually living together. They contemplated marriage ultimately and in the interim began making plans for the birth of the child, including purchases of baby furniture. Konstantin paid a part of the medical expenses incident to Anna's pregnancy.
About a month or two before the child was born, the relationship between Konstantin and Anna began to deteriorate. They abandoned the idea that a marriage between them, after each obtained a divorce, would be workable or desirable.
On September 13, 1976, in Jackson, Mississippi, Anna Karenina gave birth by caesarian section to a female child. Birth certificate no. 123-76-28544 was issued, bearing the name of the child as Natasha Karenina and reflecting Natasha's mother as Anna Karenina and her father as Alexander Karenin.
Though their marriage plans had been abandoned, Anna and Konstantin nevertheless were divorced from their respective spouses. On November 9, 1976, a final decree of divorce terminated the marriage of Anna Karenina and Alexander Karenin. That decree found as a fact that the Karenins had only one child, Alexander Karenin, II, born October 10, 1970, and that "Anna Karenin is not pregnant by Alexander Karenin at this time." Significantly, the petition making this representation was filed on August 31, 1976, which was prior to Natasha's birth. The petition and decree are otherwise silent as to Natasha. Konstantin's marriage ended by divorce after he told his wife of his relationship with Anna and her pregnancy.
After those first tumultuous days when he and Anna contemplated abortion and generally what to do about her pregnancy, Konstantin Levin has made no attempt to conceal his identity as father of the child. He paid the hospitalization and medical bills incident to the child's birth and thereafter paid to Anna approximately $30.00 per week as child support. Konstantin visited Natasha every other weekend, at Christmas and during the summer, all pursuant to an informal and originally rather workable custody, visitation and support arrangement. Konstantin acknowledged the child to be his to friends and family. Natasha even visited his mother from time to time. There was evidence of a bonding relationship between Natasha and Konstantin, whom she referred to as "daddy". And so matters stood until approximately December of 1979 or January of 1980.
In the meanwhile, Konstantin and Anna had developed new romantic interests. In December of 1977, Konstantin married his second wife, Kitty, and they had one child, Mitya. Anna began seeing Kiril Vronsky, a Biloxi attorney, and, on February 28, 1981, married him.
At some point Konstantin asked Anna for her agreement that he be allowed to adopt Natasha but she refused. Konstantin sought advice of counsel and, in consequence, stopped child support payments for a period of some ten months. Anna retaliated by denying Konstantin visitation privileges. After a time, and on advice of new counsel, Konstantin resumed weekly child support payments, which this time Anna refused to accept. By this point, the likelihood of litigation loomed large.

B.
On February 4, 1981, Konstantin Levin, in his capacity as father and her friend, filed in the Chancery Court of Jackson County his complaint for adjudication of paternity and other relief. It is important to recognize that the suit is filed in the name of Natasha Karenina through Konstantin as her father and next friend. Named as defendants are Anna Karenina Vronsky and Konstantin, individually. The complaint asked that Konstantin be adjudged Natasha's father, that he be ordered to pay reasonable support for her education and maintenance, and that Konstantin be granted "reasonable and liberal visitation privileges." Subsequently, Konstantin withdrew as next friend and Boris Badanov, Jr., an attorney, was appointed as guardian ad litem to represent and protect *521 the interests of the minor child. See Baker By Williams v. Williams, 503 So.2d 249, 252-53 (Miss. 1987).
On June 17, 1981, Anna and her new husband, Kiril Vronsky, filed in the same court a petition for adoption. In this petition Kiril sought to adopt the child and to have her name changed to Natasha Vronsky. Konstantin, of course, opposed the adoption. The Chancery Court subsequently, by order, directed consolidation of the paternity and adoption proceedings for all purposes.
After considerable and rancorous pre-trial wranglings, the matters came on for trial. On July 8, 1982, the Chancery Court released its "Opinion" finding as a fact that Konstantin Levin was the father of Natasha. In the context of the fact that Anna was at the time married to Alexander Karenin, whose name is shown as father on Natasha's birth certificate, the Chancery Court expressly held that the evidence of Konstantin's paternity was "overwhelmingly clear and convincing" so that any presumption that Alexander was the father had been overcome. The Opinion granted Natasha inheritance rights from Konstantin.
The Chancery Court awarded custody of Natasha to Anna, her mother. Konstantin was allowed visitation privileges on alternate weekends and was ordered to pay child support at the rate of $30.00 per week. The opinion provided for a one month summer custody period wherein the child would be with Konstantin, made provisions for holiday visitations, and finally granted "visitation of the child with her father at other reasonable times in addition to the above specified times."
Consistent with the foregoing, the Chancery Court denied Kiril Vronsky's petition for adoption. The Chancery Court specifically rejected Kiril's assertions of failure of support, of abandonment and desertion, and of Konstantin's alleged unfitness.
In the end, the Court ordered that the birth certificate of Natasha Karenina, No. 123-76-28544, be changed to reflect that she was born September 13, 1976, of Anna Karenina, mother, and Konstantin Levin, as father, and that her name is Natasha Levin.
Finally, there were before the Court numerous motions for impositions of sanctions and costs. In this connection the Court provided:
That Anna Karenina Vronsky and Kiril Vronsky be assessed with costs of depositions wherein they failed to appear or wherein a request for admission was denied, as follows:

 Court Reporters:
 Vronsky deposition - 10/30/81 $77.00
 Vronsky deposition - 3/11/82 64.50
 Dr. Nataly Rostova
 Bryant Deposition 87.85
 Witness fee of Dr. Nataly
 Rostova 112.50
 Blood test costs per statement
 Attorneys fees  88.5
 hours for attorney for
 Konstantin Levin at
 $50.00 per hour 4,425.00

The above are charged as court costs herein.
That Boris Badanov, Jr., Guardian ad litem of the minor child, has rendered valuable services to the Court and is entitled to be paid a fee of $3,000.00, plus the sum of $137.59 as out-of-pocket expenses, to be assessed against Anna Karenina, and Kiril Vronsky and charged as court costs herein. All other costs of court are assessed against Anna K. Vronsky and Kiril Vronsky.
Post-trial proceedings were somewhat unusual. The matter had been heard in the Chancery Court of Jackson County, Mississippi. Because two Gulf Coast attorneys were involved, the Chancery Judges of that district all recused themselves and then Chancery Judge Lenore L. Prather was appointed Special Chancery Judge to hear the case. Judge Prather conducted all trial proceedings through and including her final opinion of July 8, 1982. On July 12, 1982, Judge Prather resigned her office, incident to her appointment to and assumption of the position of Justice of the Supreme Court of Mississippi. In this sense, these consolidated cases were without a judge after July 12, 1982.
On July 26, 1982, Anna and Kiril filed a motion for a new trial. The matter lay dormant for a substantial period of time *522 following which there were several insignificant proceedings.
Two years and several months passed and the motion for a new trial had not been ruled on. On October 4, 1984, Lynn Presley, Chancery Clerk, moved for a depositional examination of Kiril as a judgment debtor. Kiril objected. On May 23, 1985, Chancery Judge Kenneth B. Robertson disposed of all pending matters and denied Anna and Kiril any relief.
On June 24, 1985, Kiril filed a motion seeking relief from the original July 8, 1982, "Opinion" and, as well, Chancery Judge Robertson's May 23, 1985, ruling. All relief was denied July 22, 1986, and Kiril now appeals.[3]

III.

A.
Kiril asserts a number of procedural[4] obstacles to these suits and our affirmance. Only three require comment.
First, Kiril argues that Konstantin had no standing to bring the paternity action as Natasha's "next friend". The point is answered in Baker By Williams v. Williams, 503 So.2d 249, 252 (Miss. 1987), negatively to Kiril's position. See also Miss. Code Ann. § 93-9-9 (1972).

B.
At various points Kiril contends that the Chancery Court's ruling of July 8, 1982, is not a final judgment and that, as such, it was not subject to a notice of appeal, nor did it begin ticking the clock regarding time for filing notice of appeal. The point need not detain us. The ten-page written ruling is entitled "Court Opinion". The last paragraph provides:
The Court makes this opinion its final order herein and orders, adjudges and decrees on this the 8th day of July, 1982.
To be sure, there is somewhat of a custom that a separate final judgment be entered following a trial court bench opinion, although there is no reason in law or logic why this must be so. Suffice it to say that the only reasonable interpretation of the ruling released July 8, 1982, is that it finally terminates the litigation in the trial court in the two consolidated cases. It sufficiently partakes of a final judgment that no further act by the court was necessary.

C.
Kiril argues further that Alexander Karenin "was never made a party to the paternity action," and, accordingly, the adjudication of paternity must be vacated.
The record reflects that on August 21, 1981, Konstantin amended his complaint in the paternity action to name Alexander Karenin as an additional party defendant. On that date Alexander was a resident of Bahia, Brazil, and he was served by publication. Miss. Code Ann. § 13-3-19 (1972). There is no suggestion of any failure to comply with the procedural requisites of the then statutory mechanism for publication service upon a non-resident. Compare Noble v. Noble, 502 So.2d 317 (Miss. 1987).
In the adoption proceeding, Alexander entered an appearance and "waive[d] any and all rights to service of process or further notice in this matter;" this by instrument signed by him on February 23, 1981, and filed with the Court.
On November 30, 1981, the Chancery Court entered its order of consolidation. That same day a hearing was held in the consolidated matters, and a subsequent order entered that day recites
that Alexander Karenin was present and that he was cognizant of the hearing although not personally served, ... .
To be sure, Alexander was never personally served in either action. In the adoption action he waived service and entered his *523 appearance. In the paternity action he was served by publication.
Quite significantly, on November 30, 1981, the Chancery Court ordered that Alexander be given "the HLA Blood Test ... to determine the paternity of the minor child... ."[5] The record reflects that Alexander did in fact submit to this blood test, the results of which "conclusively show that he could not be the father."
Kiril's point may be disposed of on several counts. Without deciding whether service by publication be sufficient to subject Alexander to a binding adjudication in the paternity action, we think it clear that Alexander waived any right he may have had to object to in personam jurisdiction. He personally appeared and without a murmur submitted to the blood test.
Lack of in personam jurisdiction is a defense personal to the particular defendant. Only he may assert lack of in personam jurisdiction and he may surely waive that defense if he does not timely assert it.[6] If there be any deficiency in the Chancery Court's personal jurisdiction over Alexander, or any non-waiver thereof, only Alexander could assert the point then or now. Suffice it to say that Alexander has made no filing here or below contesting the Court's authority to adjudge his rights in the premises.
The only point Kiril had (or has) standing to raise is whether all indispensable or necessary parties were before the Court. Anna, by pleading filed February 27, 1981, in fact made such a suggestion. Konstantin promptly amended to add Alexander as a party, and served him by publication. Alexander's personal appearance at the November 30, 1981, hearing, his subsequent submission to the blood test, and his failure to object to in personam jurisdiction over him are more than sufficient to put him before the court, assuming his indispensability. See Griffith, Mississippi Chancery Practice §§ 106-110 (2d ed. 1950); see also Rule 19, Miss.R.Civ.P., effective January 1, 1982.
The assignment of error is without merit and is denied.

IV.
Our law has long presumed a child born during the course of a marriage to have been fathered by the husband. See Herring v. Goodson, 43 Miss. 392 (1870). This idea is traceable at least to Lord Mansfield, whose rule that children conceived in marriage are products of the marriage was relaxed only when the husband was beyond the "four seas" of England. See Moore v. Smith, 173 Miss. 383, 386-94, 172 So. 317, 318-21 (1937); 9 Wigmore, Evidence § 2527 (1981). The presumption of legitimacy is one of the strongest known to our law. Deer v. State Department of Public Welfare, 518 So.2d 649, 652 (Miss. 1988); Brabham v. Brabham, 483 So.2d 341, 342-43 (Miss. 1986).
In light of the relentless nature of the human libido, cases such as this abound in the reports. Gradually, the presumption has bowed to realism.
Today the rule exists in most jurisdictions as a rebuttable presumption. See Baker By Williams v. Williams, 503 So.2d 249, 253 (Miss. 1987). Where the evidence reflects a complete separation of husband and wife during what biology tells us must have been the time of conception, we would appear a bit foolish to declare that the husband was the father. See Stone v. Stone, 210 So.2d 672, 674 (Miss. 1968); Boone v. State, 211 Miss. 318, 320-21, 51 So.2d 473, 474 (1951). Against this backdrop we consider Kiril's principal assignment of error.
Kiril argues strenuously that the Chancery Court was without authority to order the child to have been born out of wedlock and to declare Levin her father. We are *524 not clear whether Kiril challenges the Court's jurisdiction or merely argues that it committed an error of law in a case within its jurisdiction. As chancery court subject matter jurisdiction over cases of this sort may not be doubted, we consider the assignment as urging error in declaration and application of law.
A brief review of the evidence is important. The child was conceived in December of 1975. At that time Alexander was out of the country and was in the Netherlands.[7] A blood test, the results of which were introduced into evidence, conclusively established that Alexander could not be the father. Compare Baker By Williams v. Williams, 503 So.2d 249, 253 (Miss. 1987). To the contrary, during this time Konstantin and Anna had an ongoing sexual relationship. In the proceedings below Anna has never admitted that Konstantin was the father. She stated from the witness stand that she "would not bastardize her child." Still, the evidence establishes beyond any reasonable doubt that Konstantin was and is the biological father of Natasha.
Kiril cites Graham v. Lee, 204 Miss. 416, 37 So.2d 735 (1948), for the proposition that public policy should prevent the bastardizing of a child against the wishes of a mother and presumptive father. In Baker By Williams v. Williams, 503 So.2d 249 (Miss. 1987), we held that the mother of a child born of a lawful marriage could sue as next friend against the presumed natural father and stepfather. In Baker, we in effect allowed a legitimate minor child (acting through her mother as "next friend") to bastardize herself. Kiril argues that Baker is quite different from the case at bar where the child is a minor and where her guardian ad litem opposes a declaration that she was born out of wedlock. The distinction escapes us. We consider that the best reading that may be given the principles embedded in and undergirding Baker strongly supports affirmance this day.
In the end Kiril swims upstream against our familiar substantial evidence rule. See, e.g., Blissard v. White, 515 So.2d 1196, 1199 (Miss. 1987); Culbreath v. Johnson, 427 So.2d 705, 707-09 (Miss. 1983). The evidence that Konstantin was the father of the child is sufficiently free of doubt that we are without authority to interfere. See Alexander v. Alexander, 465 So.2d 340, 341 (Miss. 1985); Ivy v. State Department of Public Welfare, 449 So.2d 779, 783 (Miss. 1984). Put otherwise, we are not able to say that no rational fact finder could on this evidence have found beyond a reasonable doubt that Konstantin was the father. Contrast Coleman v. Hudson, 396 So.2d 1024, 1026 (Miss. 1981).
We do not wish to be seen insensitive to the policy argument Kiril advances, nor to Anna's wish that her child not be declared illegitimate. Rather, we bow to the notion that positive law should not declare a fact that which natural law shows could not have been. Suffice it to say that the evidence before the Chancery Court was such that the presumption of legitimacy was effectively rebutted.

V.
Kiril objects to assessment against him of attorneys fees and costs incident to the paternity action. His principal argument is that he was not a party to that case.
On November 30, 1981, the paternity action and the adoption action were consolidated. Thereafter, the two cases were in fact handled as one. In its decision filed in the consolidated actions July 9, 1982, the Chancery Court assessed various costs and fees "against Anna Karenina Vronsky and Kiril Vronsky." Without doubt, Anna was a party to both actions and assessable with costs in each. Kiril Vronsky, insofar as the record reflects, was formally a party only to the adoption action. As an unsuccessful party in that latter action, he was liable for fees and costs, but not in the paternity action.
*525 Consolidated cases never lose their identity as separate and distinct cases. Smith v. H.C. Bailey Companies, 477 So.2d 224, 231 (Miss. 1985); Stoner v. Colvin, 236 Miss. 736, 747, 748, 110 So.2d 920, 922-23 (1959); cf. Johnson v. Manhattan Railway Co., 289 U.S. 479, 496-97, 53 S.Ct. 721, 727, 77 L.Ed. 1331, 1345 (1933). This principle applies in the matter of assessment of costs. In consolidated cases, the Court has no authority to assess costs in one of the cases against one who was a party only in the other case.
As he was an unsuccessful litigant in the adoption case, Kiril Vronsky was liable for all costs legally assessable in that case. Kiril was never a party to the paternity action, and no one contends he tried that case by consent or in any way waived his right to be free of assessment of fees and costs in that action.
Insofar as the fees incidental to the adoption suit, the adoption statutes make no provision for an award of attorneys fees. In Matter of Adoption of R.M.P.C., 512 So.2d 702, 705 (Miss. 1987), the court allowed an award for fees incurred by the child's stepfather against the prevailing natural father to stand. But see Milam v. Milam, 509 So.2d 864, 866 (Miss. 1987). We now hold that an unsuccessful adoption petitioner, such as Kiril Vronsky, may be assessed reasonable attorneys fees to be paid to one such as Konstantin Levin who successfully resists the adoption. Award of such fees lies within the sound discretion of the Chancery Court. It goes without saying that such fees may not, as here, cover Konstantin's legal costs other than those reasonably and necessarily incurred in resisting the adoption.
In fixing the amount of attorneys fees, we are guided by what we have said in other contexts. In a paternity action the Court has stated that a claim for attorneys fees
has factual components that must be proved. See Craft v. Craft, 478 So.2d 258, 264 (Miss. 1985); McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982). One of those components is "the customary charge in the community." Bumgarner v. Bumgarner, 475 So.2d 455, 456 (Miss. 1985).
Clark v. Whiten, 508 So.2d 1105, 1108 (Miss. 1987). Other considerations include the skill and standing of the attorney, "the nature of the case and novelty and difficulty of the questions at issue," the time expended and labor required, as well as the "preclusion of other employment by the attorney due to the acceptance of the case." McKee v. McKee, 418 So.2d 764 (Miss. 1982).
The attorney whose fee is the issue may testify as to its reasonableness, Clark v. Whiten, supra, at 1109, as may other members of the bar, but the court "has the right to add to the evidence its opinion based on experience and observation." Johnson v. Howard, 167 Miss. 475, 493, 141 So. 573, 577 (1932). Where the evidence is insufficient, this Court has not hesitated to reverse an award. See Bumgarner v. Bumgarner, 475 So.2d 455 (Miss. 1985); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1354 (Miss. 1987) ("inadequate as a matter of law" where no evidence of time spent nor of reasonableness and necessity of the fees); and Clark v. Whiten, supra, at 1109.
Insofar as the Chancery Court assessed Kiril with attorneys fees and costs incident to defense of the paternity action, we reverse and render. We remand for redetermination of the fees and costs to be assessed against Kiril in the adoption action only, consistent with what we have said above.
There is a caveat. It appears that a part of the assessment against Kiril in the paternity action may have been for discovery sanctions. See Miss. Code Ann. § 13-1-237 (Supp. 1987), now superseded by Rule 37, Miss.R.Civ.P. Those sanctions were occasioned by Kiril's failure to respond to discovery process in the paternity action and were within the Court's authority notwithstanding that Kiril was not formally a party litigant therein.
Finally, the Chancery Court assessed against Kiril the sum of $3,137.59 for the fees and expenses of Boris Badanov, Jr., *526 guardian ad litem. Badanov was appointed by order of November 20, 1981, entered (pre-consolidation) in the paternity action only. To be sure, the Court had full authority to assess against Anna Karenina Vronsky the fees and expenses of the guardian ad litem in the paternity action. She was an unsuccessful litigant there. Kiril Vronsky was not a party to that suit and, accordingly, that portion of the judgment below as assesses against him the fees and expenses of the guardian ad litem must be reversed and rendered.
We remand for reconsideration of the fees and costs to be assessed against Kiril, consistent herewith.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] The names have been changed to protect the confidentiality of the participants in this unhappy drama.
[2] For convenience and ease of identification we often refer to the principals by their first names.
[3] Of note procedurally is the fact that Kiril Vronsky is the sole appellant. No appeal has been taken by Anna Karenina Vronsky or by any other party.
[4] As each action  the paternity suit and the petition for adoption  was filed before January 1, 1982, the Mississippi Rules of Civil Procedure do not govern or control. See Litten v. Grenada County, 437 So.2d 387, 388 (Miss. 1983).
[5] For a description of Human Leukocyte Antigen (HLA) testing, see Baker By Williams v. Williams, 503 So.2d 249, 253 (Miss. 1987).
[6] Though not technically applicable, because each of these actions was filed before January 1, 1982, Rule 12(h)(1), Miss.R.Civ.P., is a prominent manifestation of the principle that a defense of lack of in personam jurisdiction is deemed waived if not timely asserted.
[7] The transcript of the hearing has not been made a part of the record on appeal. In what is before us we find a reference to Anna's visit to Alexander in the Netherlands well after she became pregnant. When Konstantin later served him by publication, Alexander was in Brazil. No one disputes that Alexander was out of the country when the child was conceived.