# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CT-00739-SCT

*LISA MARIE FRY PERKINS RAFFERTY*

*v.*

*VERNON WAYNE PERKINS, JR. AND GERALD F. EASTER*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/1997 |
| TRIAL JUDGE: | HON. PERCY LEE LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GERALD W. CHATHAM, SR. |
| ATTORNEYS FOR APPELLEES: | RONALD L. TAYLOR |
| | JACK JONES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REMANDED IN PART - 3/23/2000 |
| MOTION FOR REHEARING FILED: | 4/6/2000; denied 5/25/2000 |
| MANDATE ISSUED: | 6/15/2000 |

## EN BANC.

## BANKS, PRESIDING JUSTICE, FOR THE COURT:

¶1. This case arises out of a paternity suit prosecuted in the name of Lisa Marie Perkins Rafferty (Rafferty) as next friend for her minor child, Justin Patrick Perkins (Justin). A jury in the DeSoto County Chancery Court found that Vernon Wayne Perkins, Jr., (Perkins) is the biological father of Justin Patrick Perkins. Rafferty perfected her appeal to this Court, which assigned the case to the Court of Appeals. A divided Court of Appeals reversed the chancery court jury's verdict as being against the weight of the evidence and remanded the case to the trial court for further proceedings to appoint a new guardian ad litem and to determine whether the paternity action had been brought in the best interest of the child before commencement of a new trial. *Rafferty v. Perkins*, No. 97-CA-00739-COA, 1999 WL 311315 (Miss. Ct. App. May 18, 1999). We agree with the dissenting opinion of Judge Irving that these issues were not properly before the Court of Appeals and that the chancellor's determination to proceed based upon the guardian ad litem's recommendation should stand. Because we hold that no reasonable jury could find that Gerald F. Easter (Easter) is not Justin's biological father, we reverse the judgment of the chancery court, reverse the judgment of the Court of Appeals, and render judgment here adjudicating Easter as Justin's biological father. We further find that this case should be remanded to the DeSoto County Chancery Court for further proceedings solely on the issue of child support.

### STATEMENT OF THE FACTS

¶2. On September 23, 1993, Rafferty, individually and as next friend of Justin, filed a paternity action in the DeSoto County Chancery Court against Perkins, her former husband, asking that Easter be declared the biological father of Justin. In her petition, she alleged that while the parties were married she gave birth to Justin and that subsequent to their divorce, she had discovered through DNA testing that Easter, and not Perkins, was the biological father of Justin. A copy of the DNA test report was attached to the petition and showed a 99.76% probability that Easter was the biological father of Justin.

¶3. Rafferty's motive in filing the paternity suit was to have Easter declared Justin's biological father so that her current husband, Mike Rafferty, whom she had originally believed to be Justin's father, could adopt Justin pursuant to an agreement between Easter and the Raffertys. She did not seek any form of support for Justin from Easter in the petition, because her intent was for she and her husband to assume responsibility for Justin's financial needs.

¶4. Perkins answered the petition and denied the allegation that he was not the father of the child and maintaining that he was the presumptive father because Justin was born during the marriage. The chancellor transferred the case to the County Court of DeSoto County so as to allow a more speedy trial of the matter. On February 3, 1995, the county court judge appointed William F. Travis as guardian ad litem for Justin.

¶5. After a failed attempt to include Easter as a plaintiff in the paternity suit, Rafferty was allowed to remove herself as plaintiff, but remained as next friend of Justin, and Easter was added as a defendant in the paternity suit over Perkins's objection, but with the consent of Easter. On March 19, 1996, the guardian ad litem filed, in letter form, a report at the request of the county court stating that he believed that the paternity suit was in the best interest of Justin in order to determine his "true lineage" for future medical needs and so that Justin might know who his biological father is if he so desired in the future.

¶6. The case finally went to trial on April 30, 1996, and at the conclusion of the trial, the jury returned its verdict finding that Easter is Justin's biological father. However, the county court judge sustained a motion for new trial filed by Perkins, concluding that: (1) he had erred in allowing into evidence the results of the paternity blood tests taken by Easter and Justin, because they were not performed in accordance with Miss. Code Ann. § 93-9-23 (1994)[1], and (2) inasmuch as Rafferty and Perkins had joint legal custody of Justin, Rafferty should have obtained the permission of the chancellor before proceeding with the paternity action. The county court judge then transferred the case back to the Chancery Court of DeSoto County with a recommendation that the chancellor appoint the existing guardian ad litem "to continue to serve as guardian ad litem whose service will benefit the court and child as he is already most familiar with this case."

¶7. On August 7, 1996, the chancellor, upon motion of Rafferty for blood tests pursuant to Miss. Code Ann. § 93-9-21 (1994), ordered Justin, Rafferty, Easter and Perkins to submit to blood tests. The results excluded Perkins as the biological father of Justin, and Easter was given a 99.94% probability of being the biological father of Justin. The results of these tests were admitted into evidence during the new trial held in the chancery court, where the jury returned its verdict finding that Perkins was Justin's father. The chancellor entered judgment accordingly, and Rafferty perfected her appeal to this Court which assigned the case to the Court of Appeals.

¶8. A divided Court of Appeals reversed the judgment of the chancery court as being against the overwhelming weight of the evidence and remanded the case to the DeSoto County Chancery Court with

directions to address certain matters before proceeding with a new trial. The Court of Appeals ordered the chancery court to determine whether Rafferty is a necessary party to the litigation, remove counsel of record for the child, appoint an independent and fully-engaged guardian ad litem to represent the best interest of the child with costs of this representation being shared equally between Rafferty and Easter, and charge the guardian ad litem with making full inquiry, along with the chancellor, into whether the continued pursuit of this paternity action is in the best interest of the child before retrying the case.

¶9. In a dissent joined by Presiding Judge King, Judge Irving asserted that, because there was no basis for a retrial, the case should be reversed and remanded to the trial court with directions to enter an order adjudicating Easter the father of Justin. The dissenters also disagreed with the majority's conclusion that the paternity suit was not properly brought with the best interest of the child in mind. They pointed out that the best interest of Justin could be served by adoption of Justin by his stepfather, Mike Rafferty, with whom Justin has been living since he was nine months old. The dissenters further argued that the position taken by the majority exceeded the court's authority, because the parties did not raise the issues addressed by the court, and because there is no statute or case law prohibiting Rafferty or Easter from bringing the paternity suit in an individual capacity, thereby eliminating the need of a guardian ad litem all together.

## STATEMENT OF THE LAW

¶10. There is a rebuttable presumption of the legitimacy of a child born during the course of a marriage. ***In re Estate of Taylor***, 609 So. 2d 390, 394 (Miss. 1992). "The presumption of legitimacy is one of the strongest known to our law." ***Karenina v. Presley***, 526 So. 2d 518, 523 (Miss. 1988). Under the facts of this case, there was therefore a strong, but rebuttable, presumption that Perkins was the biological father of Justin. However, the putative father "has the legal right to attempt to overcome the rebuttable presumption" that the ex-husband is the father of the child in question. ***W.H.W. v. J.J. ex rel. Povall***, 735 So. 2d 990, 992 (Miss. 1999) (citing ***Ivy v. Harrington***, 644 So. 2d 1218, 1221 (Miss. 1994)). We have held that HLA test results may rebut the presumption of legitimacy. ***Baker v. Williams***, 503 So. 2d 249, 253 (Miss. 1987). In this case, therefore, Easter had the right to overcome the rebuttable presumption that Perkins is Justin's biological father through the use of court-ordered blood tests. The results of the court-ordered blood testing in this case eliminated the possibility that Perkins was Justin's father and showed a probability of 99.94% that Easter is Justin's father, thereby rebutting the presumption that Perkins is Justin's father.

¶11. This result is consistent with § 93-9-27, application of which resolves the issue of Perkins's non-paternity and also dictates that these results create a presumption that Easter is Justin's father rebuttable only by a preponderance of the evidence. That statute reads:

> (1) If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If an expert concludes that the blood or other tests show the probability of paternity, such evidence shall be admitted.

> (2) There shall be rebuttable presumption, affecting the burden of proof, of paternity, if the court finds that the probability of paternity, as calculated by the experts qualified as examiners of genetic tests, is ninety-eight percent (98%) or greater. This presumption may only be rebutted by a preponderance of the evidence.

Miss. Code Ann. § 93-9-27 (1994). Dr. Deborah Lynn Cutter, who analyzed the DNA test results in this case, testified as an expert for Rafferty Perkins attempted to rebut the presumption of Easter's paternity created by the blood test results by attacking the quality and validity of the testing based upon Dr. Cutter's absence from the lab when the blood samples were drawn and tested. However, Dr. Cutter testified that the lab report included a chain of custody indicating a positive identification of all blood samples and no evidence of tampering. She also testified regarding the quality control measures utilized to ensure that no sample handling or switches occurred during testing, and that the procedures used by her lab are in accord with the AMA and ABA guidelines for paternity blood testing. Based upon the evidence presented, we agree with the Court of Appeals's finding that the jury's verdict adjudicating Perkins to be Justin's biological father was against the overwhelming weight of the evidence, requiring reversal.

¶12. The Court of Appeals did not, however, address whether the jury's verdict was insufficient as a matter of law, instead opting to remand the case for further consideration by the chancellor into the propriety of the lawsuit before pursuit of a new trial. The guardian ad litem in this case was approved both by the county court and the chancery court. His recommendation that the paternity suit was in the best interest of Justin went unchallenged at trial and on direct appeal. There being no evidence in the record to support the need for further inquiry into the qualifications of the guardian ad litem or the reliability of his recommendation to the trial court, we decline to sua sponte reverse the chancery court's decision to proceed with the action.

¶13. We have held that if the facts presented at trial, considered in the light most favorable to the appellee, "point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render." *In re Last Will & Testament & Estate of Smith*, 722 So. 2d 606, 613 (Miss. 1998) (quoting *Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So. 2d 324, 326 (Miss. 1988)). The presumption of legitimacy having been rebutted by the results of the blood test eliminating Perkins as Justin's father, even considering the evidence in the light most favorable to Perkins, we find that no reasonable jury could find that Easter is not Justin's father based upon the 99.94% probability of paternity concluded by the DNA testing.

¶14. Contrary to Perkins's assertion, this finding does not wholly eliminate the need for a jury in paternity cases. The role of the jury is still intact to weigh the evidence supporting a presumption of paternity against any rebuttal evidence. In the current case, however, no credible rebuttal evidence was presented, thereby rendering the evidence supporting the jury's verdict insufficient as a matter of law. We therefore reverse the judgment of the Court of Appeals, reverse the chancery court's judgment and render judgment here adjudicating Gerald F. Easter as the biological father of Justin Patrick Perkins. There being no basis for a retrial, we remand this case to the DeSoto County Chancery Court for further proceedings solely on the issue of child support for Justin.

¶15. **REVERSED AND RENDERED IN PART; REMANDED IN PART.**

**PRATHER, C.J., PITTMAN, P.J., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶16. The presumption that the husband is the father of a child born in wedlock is one of the strongest

presumptions recognized in this state and continues until the husband is proven beyond a reasonable doubt to be incapable of procreation or that he had no access to the wife at times when the child could have been begotten. *Alexander v. Alexander*, 465 So.2d 340, 341 (Miss.1985); *Stone v. Stone*, 210 So.2d 672, 674 (Miss.1968); *Boone v. State*, 211 Miss. 318, 320, 51 So.2d 473, 474-75 (1951). The majority allows this presumption to be overcome and a jury verdict set aside aided by nothing more than a questionable DNA test the results of which were apparently not enough to convince a jury hearing the case. The lower court erroneously held, and today's majority has just as erroneously agreed, that the evidence presented at trial was so overwhelming that no reasonable juror could find Vernon Wayne Perkins, Jr. to be the father of Justin Perkins. Finding such reasoning to be inconsistent with long-standing precedent and the facts in this case, I dissent.

¶17. Perhaps the jury gave credence to the concerns raised at trial surrounding not only the chain of custody of the blood samples but also the conduct and results of the tests themselves. The expert called to testify by the appellant admitted that she never handled the samples or actually took part in any of the testing. In fact, she was not even aware who all of the technicians were. She received the reports reflecting the test results and only from that did she develop an opinion. As a result, she was unable to testify to the integrity of the samples. For instance, while four "probes" for DNA testing were conducted on the samples for each individual, only two probes were reported for Wayne Perkins, Jr. There was no evidence presented by the appellant to explain why only two were reported, much less the whereabouts of the other two probes.

¶18. We must look no further than the history of this very case to see the difficulties and inaccuracies involved when DNA tests replace the trier of fact. In the first trial for these parties, the judge ordered a new trial because the blood tests used were not in compliance with Miss. Code Ann. § 93-9-23 (1994 & Supp. 1999), not having been performed by a court-appointed expert of genetic testing.

¶19. In *City of Jackson v. Locklar*, 431 So.2d 475, 478-79 (Miss.1983), this Court stated:

> Our institutional role mandates substantial deference to the jury's findings of fact and to the trial judge's determination whether a jury issue was tendered. When a verdict is challenged via appeal from denial of a motion for j.n.o.v., we have before us the same record that the trial judge had. We see the testimony the trial judge heard. We do not, however, observe the manner and demeanor of the witnesses. We do not smell the smoke of battle. . .

¶20. Clearly more weight must be given to the decision of a jury. The results of scientific tests, including paternity tests should not remove the right of a jury to resolve issues of fact. If such a rationale were acceptable, the criminal courts could dismiss all jurors and attorneys today and simply turn on a polygraph machine and abide by its results. Accordingly, I dissent.

1. The trial judge found that the blood tests were not in compliance with § 93-9-23, because they had not been performed by a court-appointed expert of genetic testing.